UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


REBECCA ANNE KESLER,

        Plaintiff,

                                 CASE NOS. 04-CV-40235-FL
                                       05-CV-40266-FL
      v.                         JUDGE PAUL V. GADOLA
                               MAGISTRATE JUDGE PAUL KOMIVES

BARRIS, SOTT, DENN &
DRIKER, PLLC,

        Defendant.

_____/


## REPORT AND RECOMMENDATION

| | | |
|---|---|---|
| I. | RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| II. | REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | A.     *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| | B.     *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| | C.     *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| | D.     *Defendant's Motion to Dismiss Based on State Court Resolution* . . . . . . . . . . . . . . . . . . . . . . | 10 |
| |         1.       *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| |         2.       *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 |
| | E.     *Plaintiff's FMLA Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| |         1.       *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| |         2.       *Interference* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| |         3.       *Retaliation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| | F.     *Plaintiff's ADA Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| |         1.       *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24 |
| |         2.       *Discrimination* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |
| |               a. Prima Facie Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 25 |
| |               b. Legitimate Reason/Pretext . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 |
| |         3.       *Retaliation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 29 |
| | G.     *Plaintiff's Direct Evidence of Discrimination and Retaliation* . . . . . . . . . . . . . . . . . . . . . . . . | 30 |
| | H.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 34 |
| III. | NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 35 |

1

I.      <u>RECOMMENDATION</u>: The Court should deny defendant's motion to dismiss on grounds of res judicata (docket #56), and should grant defendant's motion for summary judgment (docket #52).

II.     <u>REPORT</u>:

A.      *Procedural Background*

Plaintiff Rebecca Anne Kesler commenced these actions against defendant Barris, Sott, Denn & Driker, PLLC ("BSDD" or "the Firm"), her former employer, based on events arising from her employment with and eventual termination by defendant.  In Case No. 04-40235, filed on August 17, 2004, plaintiff brings claims of employment discrimination on the basis of disability under § 107(a) of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117, as well as retaliation for taking medical leave under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et. seq*.  In Case No. 05-40266, filed on June 27, 2005, plaintiff brings claims under the Employee Retirement Income Security Act (ERISA).

On August 18, 2004, the Court entered an Order of Partial Dismissal in Case No. 04-40235, dismissing the state law claims raised by plaintiff.  Plaintiff filed an amended complaint in that case, asserting only her federal claims, on August 26, 2004.  On December 6, 2006, the Court entered a Stipulated Order consolidating the cases, and a Stipulated Order dismissing the ERISA claims raised in Case No. 05-40266.  Accordingly, only the ADA and FMLA claims raised in plaintiff's amended complaint in Case No. 04-40235 remain pending.

With respect to these remaining claims, currently before the Court are two dispositive motions.  On October 3, 2005, defendant filed a motion for summary judgment on the merits of

plaintiff's ADA and FMLA claims.[1]  Plaintiff filed a response to the motion on October 27, 2005, and defendant filed a reply on November 9, 2005.  Second, defendant filed a motion to dismiss based on res judicata on August 1, 2006, arguing that plaintiff's claims are barred by a mediation award entered in state court.  Plaintiff filed a response on August 21, 2006, and defendant filed a reply on September 1, 2006.  For the reasons that follow, the Court should grant defendant's motion for summary judgment and should deny defendant's motion to dismiss on the basis of res judicata.

B.    *Factual Background*

Plaintiff attended law school at Wayne State University, graduating in 1999 and passing the July 1999 bar exam.  On October 22, 2001, plaintiff was hired by defendant, BSDD, to work as an associate in the litigation group.  In May 2002, plaintiff was diagnosed with Graves' Disease, which is a rare autoimmune disease of the thyroid.  On May 23, 2002, plaintiff sent a memo to managing partner Sharon Woods (also copied to Eugene Driker, senior partner, and Elizabeth Williams-Winfield, firm administrator), informing them of the diagnosis.  This memo was supplemented with a note from her treating physician.  In the memo, plaintiff stated that she wanted to continue working, but that she would need time off for testing and that she may possibly need to reduce her work hours at some point.  She also stated that in the event surgery was necessary, she would need time off for the surgery and for recovery.  In the memo, plaintiff also stated that she wanted to begin treatment using anti-thyroid medication instead of immediately submitting to a surgical removal of the thyroid.  Plaintiff alleges that, as a result of the memo, in May of 2002 Mr. Driker told her that she could take off as much time as she needed.  Plaintiff alleges that at the end of May 2002, she

---

[1]At defendant's request, this motion was stricken by the Court on November 7, 2005, because it inadvertently included exhibits which were required to be filed under seal.  Defendant refiled the identical motion on November 9, 2005.

reduced her schedule to part-time and began working from home without any negative affect on her compensation. Plaintiff also admits to requesting and being granted accommodations for time off for doctor's appointments, lifting restrictions, secretarial support for typing and compliance with light restrictions.

Plaintiff further alleges that shortly after the circulation of the memo, around May 28, 2002, Williams-Winfield, the firm administrator, approached her and requested that she complete a form entitled, "Request for Family or Medical Leave" (FMLA form).  Plaintiff alleges that even though she questioned her eligibility since she had not been employed by the firm for at least 12 months, Williams-Winfield stated that the members of BSDD decided to treat the leave as a FMLA qualified leave.  Plaintiff alleges that the FMLA eligibility leave was confirmed by partners Eugene Driker and Morley Witus.

Plaintiff claimed to be experiencing several medical problems associated with Graves' Disease. These symptoms included: difficulty sleeping from approximately October 2001 through November 2002; substantial muscle wasting and weakness in her arms, resulting in an inability to lift her arms over her head or lift heavy objects, and an inability to cook, clean, dress herself, bathe herself, type, or write from approximately May 2002 through May 2003; substantial weakness in her back, legs and stomach muscles, resulting in an inability to stand for more than a few minutes at a time, climb a flight of stairs, walk short distances without taking a break, and difficulty driving and sitting up in a chair from approximately June of 2002 through May or June of 2003; and substantial difficulty seeing and an aversion to bright light due to swelling of the muscles in her eyes.

Plaintiff alleges that as a result of her notification that she had Graves' Disease, she was

4

subjected to infliction of eye pain through light sensitivity and name calling by a partner, Todd Mendel, on several occasions. This treatment spanned from the time she notified the firm of her disease up through the date of her surgery. Plaintiff also alleges that several partners, both before and after her surgery, made comments about the lights being off in her office and threatened to take her cases away due to her illness, despite knowing about her illness when she joined the firm,

After anti-thyroid treatment proved ineffective, plaintiff elected to have her thyroid removed and notified the firm of the date of her surgery in advance. The surgery was scheduled for September 18, 2002, yet plaintiff decided to take off September 17, 2002, in order to relax and prepare mentally; the extra day was not indicated as medically necessary by her treating physician even though she alleged that he had advised her not to even work in the first place. Plaintiff alleges that a partner, Barnes, insisted that she could not leave for her medical leave on September 17 and that she had to work instead. Plaintiff claims to have worked about 9 billable hours that day and began her leave the day of her surgery.

Plaintiff claims that during her medical leave, BSDD employees constantly contacted her regarding discovery questions and where things were located. An employee of defendant, Michelle R. Loggins, admitted in her deposition that the firm had contacted plaintiff on no more than five occasions and that plaintiff did not seem to mind. Plaintiff also alleges that BSDD tried to make her work on cases from home while she was on medical leave, but admits that the documents on which she was supposed to work were never delivered to her home. Plaintiff further admits that she was paid during her medical leave.

Plaintiff returned from her thyroid-related leave on October 9, 2002. Plaintiff claims to have informed a partner, Witus, that she was still really weak and needed to remain on typing and lifting

restrictions.  Defendant asserts that in her email informing the firm that she was back to work, plaintiff did not indicate that she was on any restriction and did not provide further documentation to that effect.

Next, in December 2002, plaintiff had a tonsillectomy. Plaintiff informed defendant of the need for the tonsillectomy during the summer of 2002 (plaintiff first said she informed BSDD in mid-June or July, and later stated it was sometime in August); the tonsillectomy had been previously scheduled but was delayed due to the thyroid surgery. Plaintiff had anticipated taking December 5, 2002 (the day of the surgery), and December 6, 2002, off for her tonsillectomy.  Due to complications, plaintiff underwent emergency surgery.  Plaintiff's husband informed BSDD of the complications.  On December 7, 2002, plaintiff contacted Morley Witus and requested an additional week off.  The parties do not dispute that the additional time off was granted; however plaintiff asserts that Witus stated that the additional leave would be added to her FMLA entitlement.  Plaintiff returned to work the following Friday.

The parties are in dispute regarding the quality of plaintiff's work product throughout her employment.  Plaintiff alleges that as early as January 2002, less than three months after she began working for BSDD, the firm conducted its first review of plaintiff's performance.  In this review, plaintiff alleges, she was praised for her work and given a $250 bonus.  According to plaintiff, the firm was generally satisfied with her efforts; for example, on May 1, 2002, plaintiff was given a memo composed by Donald Barris—a founding member of BSDD—commending her work on a particular case.  Defendant, on the other hand, cites numerous examples provided by various partners in the litigation group regarding consistent problems with the quality of plaintiff's performance prior to January 2003, including, but not limited to:  failure to file a motion to stay with the Circuit Court

6

when a matter was on appeal, despite being specifically directed to do so; arguing with a partner regarding the need to file a third party complaint when being directed to do so; the need to repeatedly redraft briefs, and failure to include in the redraft specific points that she was instructed to include;

missing a case directly on point and failing to include that case in the reply brief; turning in sloppy, poorly written memorandum that was to be submitted to a senior partner; using an outdated version of the Civil Jury Instructions to prepare jury instructions for a case going to trial; and regarding a UCC issues, in which the assigning partner outlined the arguments, preparing a memorandum that cited no legal authority and, upon request to follow up with specific research, stating that she did not have the time.  Defendant contends that many partners found plaintiff's overall work to be superficial and that plaintiff had a poor work ethic.

Prior to plaintiff's 2002 year-end evaluation, conducted in January 2003, the partners of the firm met to discuss the performance of the firm's associates.  Plaintiff alleges that the firm decided not to give her a raise or bonus because she had taken so much time off for her medical leave and because of her illness. Defendant claims that the reason to defer a decision on her bonus for three months was due to the fact that there was a consensus that her work product was lacking and that evaluating her on just nine months of work was not fair; the partners were giving her a chance to improve and to provide additional writing samples so that her work could be reevaluated after three months. Plaintiff disputes this claim, alleging that the members of BSDD informed her during her January 2003 review that the members felt she was generally doing a good job, and that they only would like to see her performance rise from 90-95% to the level of exceptional.

Defendant contends that after the January 2003 evaluation, partners at BSDD continued to

have problems with plaintiff's performance, including: failing, as of April 2, 2003, to complete an assignment that had been given to her on February 4; failing to file a motion to stay a matter in the circuit court pending appeal as she had been directed; and failing, when a default was entered for failure to timely answer a complaint, to inform the partner in charge of the case, and failing to make further progress on the case. At a partner meeting in March 2003, the partners reached a consensus that plaintiff had not made any improvements in the areas in which she was lacking and, as a result, a decision was reached to terminate her employment. On April 16, 2003, plaintiff was informed of her termination. She was to remain employed with the firm until May 31, 2003. Subsequently, plaintiff requested and was granted an extension. Her last day of employment was June 13, 2004.

Plaintiff filed a charge with the EEOC on February 5, 2004. In that EEOC charge, plaintiff alleged that she did not receive a raise or bonus in 2003 and was subsequently terminated based on her perceived disability. Plaintiff's EEOC charge was dismissed based on the fact that the evidence failed to meet a "more likely than not" standard. Plaintiff then filed the instant lawsuit on August 17, 2004, alleging violations of the Family Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA).

C.    *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.* 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact

8

is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52

(citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must

view the evidence in a light most favorable to the non-movant as well as draw all reasonable

inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603,

613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of

material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party

need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the

burden on the moving party is discharged by 'showing'—that is, pointing out to the district

court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*,

477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving

party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986)); *see also,* FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than

present some evidence on a disputed issue. As the Supreme Court has explained: "There is no issue

for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict

for that party. If the [non-movant's] evidence is merely colorable, or it is not significantly probative,

summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex

Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 586-87

(1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's

position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

D.     *Defendant's Motion to Dismiss Based on State Court Resolution*

1.     *Applicable Law*

The Full Faith and Credit Clause of the Constitution commands that "[f]ull Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."  U.S. CONST. art. IV, § 1.  Pursuant to the grant of authority in Article IV, § 1, Congress has implemented this command through the Full Faith and Credit Act, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they would have by law or usage in the courts of such State . . . from which they are taken."  28 U.S.C. § 1738.  As the Supreme Court has explained, "[t]his statute directs a federal court to refer to the preclusion law of the State in which the judgment was rendered."  *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *see also*, *In re Fordu*, 201 F.3d 693, 703 (6th Cir. 1999).  Accordingly, the preclusive effect of the Michigan court judgment in this Court is governed by Michigan law.

As the Sixth Circuit has explained, the concept of res judicata actually encompasses two distinct concepts.  *See Heyliger v. State Univ. & Community College Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir. Oct. 3, 1997); *J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996).  Claim preclusion, or "true" res judicata, "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit."  *Heyliger*, 126 F.3d at 852 (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984))); *see also*, *J.Z.G. Resources*, 84 F.3d at 214.  Issue

10

preclusion, or collateral estoppel, on the other hand, mandates that "'[w]hen an issue of fact or law

is actually litigated and determined by a valid and final judgment, and the determination is essential

to the judgment, the determination is conclusive in a subsequent action between the parties, whether

on the same or a different claim.'" *Heyliger*, 126 F.3d at 853 (quoting RESTATEMENT (SECOND) OF

JUDGMENTS § 27 (1982)).[2]

Defendant does not argue that the state court judgment at issue here has any issue preclusive

effect.  Rather, defendant argues only that the judgment has "true" res judicata, or claim preclusive,

effect.  Under Michigan law, claim preclusion "bars a second, subsequent action when (1) the prior

action was decided on the merits, (2) both actions involve the same parties or their privies, and (3)

the matter in the second case was, or could have been, resolved in the first."  *Adair v. State*, 470

Mich. 105, 121, 680 N.W.2d 386, 396 (2004); *see also*, *Vanwulfen v. Montmorency County*, 345 F.

Supp. 2d 730, 739 (E.D. Mich. 2004) (Lawson, J.) (discussing Michigan law); *Dart v. Dart*, 460

Mich. 573, 586, 597 N.W.2d 82, 88 (1999).  The doctrine is interpreted broadly, and it "bars not

only claims already litigated, but also every claim arising from the same transaction that the parties,

exercising reasonable diligence, could have raised but did not."  *Adair*, 470 Mich. at 121, 680

N.W.2d at 396; *Dart*, 460 Mich. at 586, 597 N.W.2d at 88.

2.      *Analysis*

The facts relating to defendant's motion are not in dispute.  As noted above, plaintiff initially

raised state law claims in this Court based on the same set of facts which gives rise to her FMLA

---

[2]In *Heyliger*, the Sixth Circuit "'express[ed] [the] hope that future litigants, in the interests
of precision and clarity, will formulate arguments which refer solely to issue or claim preclusion
and which refrain from using the predecessors of those terms, whose meanings have become so
convoluted.'"  *Heyliger*, 126 F.3d at 852 (quoting *Barnes*, 848 F.2d at 728 n.5).  Accordingly, I
refer to the issues by those terms.

and ADA claims.  On August 18, 2004, the Court dismissed those claims, concluding that it would not be proper to exercise supplemental jurisdiction over the claims.  Subsequently, plaintiff amended her complaint in this Court by deleting the state law claims, and simultaneously filed an action in the Wayne County Circuit Court raising these state law claims.  On June 12, 2006, plaintiff's state case was evaluated by the Wayne County Mediation Tribunal.  Both plaintiff and defendant accepted the mediation panel award pursuant to MICH. CT. R. 2.403, and on July 24, 2006, the Wayne County Circuit Court dismissed the action based on the acceptance of the mediation award pursuant to Rule 2.403(M)(1).  Defendant argues that, because the state law claims were based on nearly identical factual allegations as those on which plaintiff's FMLA and ADA claims are based, the state court judgment has preclusive effect and bars her federal claims.  The Court should reject this argument and deny plaintiff's motion, because the judgment based on the acceptance of the mediation award does not constitute a decision on the merits under Michigan preclusion law.

It is true that the judgment entered following acceptance of a mediation award constitutes a final judgment.  The Michigan Court Rules provide that "[t]he judgment or dismissal shall be deemed to dispose of all claims in the action[.]" MICH. CT. R. 2.403(M)(1).  As the Michigan Supreme Court has explained, "[t]he language of MCR 2.403(M)(1) could not be more clear that accepting a case evaluation means that *all claims* in the *action,* even those summarily disposed, are dismissed." *CAM Constr. v. Lake Edgewood Condominium Ass'n*, 465 Mich. 549, 555, 640 N.W.2d 256, 259 (2002) (emphasis added).  However, *CAM Construction* concerned only claims which had been actually raised in the action which resulted in a mediation award, and was based on the plain language of Rule 2.403(M)(1).  Neither the language of that rule, nor the reasoning of the court in *CAM Construction*, addresses the continuing viability of claims which were not raised in the action.

12

The Court need not consider the individual elements of Michigan claim preclusion law because, even if the elements were satisfied, a finding of preclusion would be both contrary to the underlying policy supporting the preclusion rules and inequitable.  Under Michigan law, "[r]es judicata will not apply when it would result in inequitable administration of the laws."  *People v. Robinson*, 227 Mich. App. 28, 34, 575 N.W.2d 784, 787 (1998) (citing *Young v. Detroit City Clerk*, 389 Mich. 333, 340, 207 N.W.2d 126, 128 (1973)); *see also*, *Quintin v. General Motors Corp.*, 453 Mich. 63, 99-100, 551 N.W.2d 677, 692 (1996) (Boyle, J., for three justice plurality).  The purpose of the claim preclusion rules is to avoid piecemeal litigation which would arise from allowing a plaintiff to proceed with essentially the same case in different courts or successive suits.  Here, however, "plaintiff did not split [her] causes of action and prudently raised all of [her] claims in one complaint."  *King v. Michigan Consolidated Gas Co.*, 177 Mich. App. 531, 536, 442 N.W.2d 714, 716 (1989).  Rather, this Court determined that it would decline to exercise supplemental jurisdiction over plaintiff's state law claims.

This situation is akin to that described in the *Restatement* relating to judgments.  Under the rule governing claim preclusion, the *Restatement* explains:

> A given claim may find support in theories or grounds arising from both state and federal law.  When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdiction obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground.  If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.

RESTATEMENT (SECOND) OF JUDGMENTS, § 25 comment e.  The Michigan courts have adopted this approach, finding that a state law claim over which the federal court has declined, or would have

declined, to exercise supplemental jurisdiction is not barred by the federal court judgment on the federal claim. *See Bergeron v. Busch*, 228 Mich. App. 618, 627, 579 N.W.2d 124, 129 (1998); *King*, 177 Mich. App. at 536, 442 N.W2d at 716.

Here, this approach is not directly applicable because of an anomaly not present in the ordinary case–indeed, I have been unable to find a single case, state or federal, involving this situation. Generally, the federal court decision will come first, and the state court claim second. In such a case, the state court is considering the preclusive effect of the federal court decision and, consistent with the *Restatement* approach, finds that state law claim not precluded if the federal court had declined to exercise supplemental jurisdiction over the claim. Here, however, the state court action, although filed second, reached judgment first and thus is considered the first case for preclusion purposes. Nevertheless, the policy reflected in the *Restatement* and adopted by the Michigan courts is equally applicable here. Plaintiff did what she was required to do: she brought all of her claims, both federal and state, in one case. This Court effectively split her claims, declining to exercise supplemental jurisdiction over the state law claims. The policy permitting plaintiff to pursue her federal claims here and her state claims in state court, as reflected in the *Restatement* approach, is the same regardless of which court first enters judgment.

Under defendant's approach, plaintiff would have been forced, through no fault of her own, to forfeit a right protected by law. Defendant's argument would have required plaintiff, upon this Court's decision declining to exercise jurisdiction, to either (a) forego the federal forum to which she was entitled and pursue all of her claims in state court, or (b) wait to file her state action until after judgment had been entered in this case (which would have been permissible under the *Restatement* approach as adopted by the Michigan courts) but risk having the statute of limitations

14

on her state law claims run in the meantime, thereby losing them forever, or (c) do what she did, with the hope that the federal court would enter judgment before the state court. Indeed, defendant's approach would allow a *defendant* to enforce this catch-22 on a plaintiff. Suppose that plaintiff, instead of filing her claims here, filed all of her claims in the state court. Defendant would have been permitted to remove the claims to this Court. If this Court had then declined to exercise supplemental jurisdiction over the state law claims, plaintiff would find herself in the same position that she is now, only put there by the defendant instead of the Court. It cannot be the case that a proper harmonization of the removal and supplemental jurisdiction statutes with the rules of claim preclusion result in either a court or a defendant being able to bar a plaintiff from bringing all of her claims in one action and then requiring that she forfeit either the state or federal claims. Such a result would be inequitable, and contrary to the policies reflected in the *Restatement* which have been adopted by the Michigan courts. In short, this case is nearly identical to the rule stated in the *Restatement*, *King*, and *Bergeron*, and the fact that the state court happened to enter judgment first should not change the result which otherwise would be mandated by those authorities. Accordingly, the Court should deny defendant's motion to dismiss based upon the state court resolution.

E.      *Plaintiff's FMLA Claims*

Turning to the merits of plaintiff's claims, the Court should conclude that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law on plaintiff's claims under the Family and Medical Leave Act.

1.      *Applicable Law*

"The FMLA provides that an eligible employee . . . is entitled to medical leave in the event of 'a serious health condition that makes the employee unable to perform the functions of the

position of such employee.'" *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 553-54

(6th Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(D)).   As the Sixth Circuit has explained, there are

two theories for recovery under FMLA: "(1) the 'entitlement' or 'interference' theory arising from

29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C.

§ 2615(a)(2)." *Id.* at 555 (internal quotation omitted).   A FMLA retaliation claim is governed by

the familiar burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973).  *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006); *Skrjanc v. Great*

*Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001).   Under this framework, plaintiff has the

burden of demonstrating a prima facie case of retaliation.  *See Skrjanc*, 272 F.3d at 315 (citing

*McDonnell Douglas*, 411 U.S. at 802.   In order to demonstrate a prima facie case, plaintiff must

show that:

> (1) she was engaged in activity protected by the FMLA; (2) the employer knew that
> she was exercising her rights under the FMLA; (3) after learning of the employee's
> exercise of FMLA rights, the employer took an employment action adverse to her;
> and (4) there was a causal connection between the protected FMLA activity and the
> adverse employment action.

*Killian*, 454 F.3d at 556.  If plaintiff establishes a prima facie case, the burden shifts to the defendant

to articulate a legitimate, non-retaliatory reason for the adverse action.  *See Skrjanc*, 272 F.3d at 315

(citing *McDonnell Douglas*, 411 U.S. at 802-04).   Once defendant does so, the burden shifts back

to plaintiff to demonstrate that the articulated reason is merely a pretext designed to mask

discrimination.  *See id.* (citing *McDonnell Douglas*, 411 U.S. at 804-06).

Unlike a retaliation claim under FMLA or a discrimination claim under other civil rights

statutes, an interference claim under FMLA concerns not whether an employer treated an employee

differently, but whether the employer granted substantive rights to which the employee was entitled.

16

For this reason, the courts that have considered the matter have found that the *McDonnell Douglas* framework is inapplicable to a FMLA interference claim. *See Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001); *Rankin v. Seagate Tech., Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001); *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712-13 (7th Cir. 1997). To succeed on a FMLA interference claim, therefore, plaintiff need only show by a preponderance of the evidence that:

> (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave notice of her intentions to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.

*Killian*, 454 F.3d at 556 (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).

      2.    *Interference*

      Elements two, three and four of the FMLA interference claim are not at issue in defendant's motion for summary judgment. Defendant does, however, dispute that plaintiff was an eligible employee under the FMLA under element one, and that plaintiff was denied FMLA benefits under the fifth element.

      To qualify as an "eligible employee" under the FMLA, plaintiff must show that she (1) worked for the employer for at least twelve months; and (2) worked at least 1,250 hours during the twelve month period before the start of the leave. *See* 29 U.S.C. § 2611(2)(A). Plaintiff also must show that her employer employed at least 50 employees within a seventy-five mile radius of her worksite. *See* 29 U.S.C. § 2611(2)(B)(ii). Plaintiff began working for defendant in October of 2001 and began her medical leave on September 18, 2002. Plaintiff does not dispute that she was not employed for the requisite twelve month period. *See* Pl.'s Br., Ex. C, Pl.'s Depo. 164. However, plaintiff claims that in May of 2002, Elizabeth Williams-Winfield stated that the firm had

17

determined to classify her leave as FMLA-qualifying. *Id.* at 280. As a result, plaintiff asserts that she detrimentally relied on the firm's representation that she was eligible for FMLA leave and therefore defendant is estopped from denying the eligibility. *See* Pl.'s Br. 23.[3]  The equitable estoppel doctrine is evoked when a person "makes a definite misrepresentation of fact to another person having reason to believe the other will rely upon it and the other does" so to his or her detriment. *Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223 (1984) (citing RESTATEMENT (SECOND) OF TORTS § 894(1) (1979)).  Applying this doctrine to the instant case, plaintiff's assertion that the firm requested that she fill out FMLA paperwork and that she took the leave in reliance on that approval creates a genuine issue of material fact regarding whether or not plaintiff satisfied the initial requirement of being considered an "eligible employee" with regards to her September 2002 leave.[4]  *See* Pl.'s Br., Ex. C., Pl.'s Depo. 164, 280.  For purposes of analyzing the remaining elements, the Court should therefore proceed on the assumption that plaintiff has satisfied her burden of proving she was an eligible employee.

With respect to the fifth element, in her complaint plaintiff cites three specific instances to support allegations that defendant denied her the FMLA benefits she was entitled to. These actions include:

---

[3] Plaintiff also relies on 29 C.F.R. § 825.110(d) to assert that once an employer determines that an employee is an eligible employee and notifies the employee of that decision, the employer may not subsequently challenge the employee's eligibility. However, several circuits have expressly invalidated the regulation because it impermissibly expands the scope of employee eligibility. *See e.g., Woodford v. Community Action of Greene County*, 268 F.3d 51, 55 (2d Cir. 2001); *Brungart V. BellSouth Telecomms., Inc.* 231 F.3d 791, 795-97 (11th Cir. 2000); *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582-82 (7th Cir. 2000). Defendant also correctly points to a case originating from this Court, *Alexander v. Ford Motor Company*, 204 F.R.D. 315, 319-20 (E.D. Mich. 2001), which agrees with the majority of courts and invalidates the regulation.

[4] Defendant does not dispute that plaintiff was deemed an eligible employee at the time of her tonsillectomy leave.

(1) "On or about September 16, 2002, BSDD informed Plaintiff that she could not begin her medical leave as scheduled because BSDD needed her to work of September 17, 2002;"

(2) "BSDD repeatedly contacted Plaintiff with work-related questions while plaintiff was on medical leave;" and

(3) "BSDD also requested that Plaintiff perform work while she was on medical leave."

Pl.'s Compl. ¶¶ 19, 22, 23.[5]  The Court should conclude that none of these instances amounts to a denial of FMLA benefits, and thus that plaintiff has failed to raise a genuine issue of material fact with respect to the fifth element of her FMLA interference claim.

Under the FMLA, a qualifying employee is entitled to take up to twelve weeks of unpaid leave each year if an employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)).  Eligible employees are also qualified to be reinstated to their previous positions, or "to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1).  However, "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

Plaintiff does not satisfy her prima facie case of FMLA interference.  Plaintiff's surgery was scheduled on September 18, 2002.  Plaintiff stated that she decided to take off September 17th, "[j]ust so [she] would have a day to relax and prepare mentally." *See* Pl.'s Br., Ex. C, Pl.'s Dep. at 164. When pressed further with the question, "Had your doctor indicated that you needed the day,

---

[5] Plaintiff's complaint does not allege an interference claim with respect to the leave relating to her tonsillectomy.

or is that just something you thought would be helpful[,]" plaintiff replied that she thought it would

be helpful.  *See id.* at 165.  Because the FMLA leave is designated for serious health conditions and

not simply for relaxation, delaying her leave date by one day is not FMLA interference. *See* Pl.'s

Br., Ex. C, Pl.'s Dep. at 164-165.

Next, plaintiff asserts that contacting her at home with work-related questions during her

leave interfered with her FMLA benefits.  Although plaintiff stated that she would have preferred

to have been able to rehabilitate and rest without being disturbed, *see id.* at 90, she also admitted that

she did not think it was totally inappropriate for anyone at BSDD to call her while on her medical

leave. *See id.* at 89.  Furthermore, the facts on record show that most of the instances in which

defendant contacted plaintiff had to do with asking details regarding documents the plaintiff had

worked on as well as where those documents were located.  *See e.g.* Pl.'s Br., Ex. C, Pl.'s Dep. at

88, 89; Pl.'s Br., Ex. F, Dep. of Michelle R. Loggins, at 58-60 (stating that plaintiff never mentioned

that she had  problem answering the questions posed by BSDD employees); Def.'s Br. Ex. 4, Dep.

of Dennis Barnes, at 53 (wanting an employee to "call and find out where the originals of the trust

committee minutes" were).  Also, plaintiff acknowledged being paid during her FMLA leave.  *See*

Pl.'s Br., Ex. C, Pl.'s Dep., at 90.  Thus, plaintiff's argument that contacting her at home was a

violation of her FMLA rights does not succeed.

Finally, plaintiff's assertion that BSDD requested that she work from home must also fail.

Plaintiff alleges that on several occasions Dennis Barnes, a partner of BSDD contacted her during

her recovery from the thyroid surgery to request that plaintiff review documents at home, or that she

return to the office and do so. *See* Pl.'s Br., Ex. C, Pl.'s Depo. 90-1. Plaintiff then stated that she

would not come into the office, and that she was on medical leave, but if Barnes wanted to send the

20

discovery material to her home, he could do so. *See Id.* However, plaintiff's deposition also reveals that no documents were ever sent to the plaintiff's home, and therefore she did not conduct any work for the defendant while on FMLA leave for her thyroid surgery. *See* Pl.'s Br., Ex. C, Pl.'s Depo. 91. Accordingly, the Court should grant defendant's motion for summary judgment with respect to plaintiff's FMLA entitlement claims.

3.      *Retaliation*

Plaintiff also alleges that defendant retaliated against her for exercising her FMLA rights. Specifically, plaintiff points to two allegedly retaliatory actions: (1) denying her a bonus and raise; and (2) terminating her employment.  As established for the purposes of the FMLA interference claim, plaintiff's leaves for her thyroid surgery and tonsillectomy were covered by the FMLA. Thus, plaintiff meets the first requirement of the FMLA retaliation claim—she was engaged in an FMLA protected activity.  Because plaintiff alleges that defendant approved her thyroid surgery as FMLA leave, *see* Pl.'s Br., Ex. C, Pl.'s Depo. 164, and that plaintiff informed defendant of the date of her thyroid surgery as well as her assertion that defendant stated the additional time off relating to the tonsillectomy complications would be added to her FMLA entitlement, *see Id.* at 179, plaintiff has satisfied the second element of her prima facie case for FMLA retaliation.

However, plaintiff cannot establish the remaining elements of her retaliation claim.  With respect to the bonus and raise issue, plaintiff has failed to demonstrate an adverse action.  There is no evidence presented by plaintiff that the raise and bonus decisions were anything other than discretionary decisions by defendant, and or that she had anything other than a subjective expectation, as opposed to an entitlement, to a raise or bonus.  Because there was no automatic entitlement, the denial of the raise or bonus without any diminution of her salary and benefits does

21

not constitute an adverse employment action.  *See Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996); *Nasis-Parsons v. Wynne*, No. 4:05CV36, 2006 WL 1555913, at *5 (E.D. Va. June 1, 2006); *Casiano v. Gonzales*, No. 3:04CV67, 2006 WL 229956, at *12 (N.D. Fla. Jan. 31, 2006).

With respect to her termination, plaintiff has presented no evidence that the termination was causally related to her exercise of FMLA rights.  Plaintiff's argument is based solely on the fact that the termination followed the exercise of the FMLA rights.  There appears to be some question in the Sixth Circuit as to whether temporal proximity between protected activity and an adverse employment decision alone can satisfy the causal connection prong of the *prima facie* case. *Compare Balmer v. HCA, Inc.*, 423 F.3d 606, 615 (6th Cir. 2005) (internal quotation omitted) ("[T]he mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim.") *and Walcott v. City of Cleveland*, 123 Fed. Appx. 171, 178 (6th Cir. 2005) (citing *Hafford v. Seidner*, 183 F.3d 506, 516 (6th Cir. 1999)) ("Temporal proximity alone, without additional evidence of a retaliatory animus, will not suffice to support a finding of a causal connection."), *with Singfield v. Akron Metropolitan Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding *prima facie* case established by temporal proximity of protected conduct and adverse employment action).  However, even assuming that temporal proximity alone can suffice in some cases, this is not such a case because plaintiff's demotion is too remote in time from the EEOC charge to support an inference of discrimination.  As the Supreme Court explained in *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001), "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal

22

proximity must be 'very close.'" *Id*. at 273 (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). In support of this proposition, the Court cited cases holding that lapses of even three months between the protected activity and the adverse employment action are too long to support an inference of discrimination. *See id*. (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3 month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4 month period insufficient)). Here, the decision to terminate plaintiff was made over four months after her brief tonsillectomy leave, and over six months after her more significant thyroid-related leave. In the absence of any other evidence of retaliatory motive, these intervals are too long to support an inference that her termination was causally related to her protected activity. *See Miller v. Automobile Club of N.M., Inc.*, 420 F.3d 1098, 1121 (10th Cir. 2005); *Feltmann v. Sieben*, 108 F.3d 970, 976-77 (8th Cir. 1997); *Noble v. Sheahan*, 132 F. Supp. 2d 626, 642 (N.D. Ill. 2001); *Cruse v. G & J USA Pub.*, 96 F. Supp. 2d 320, 327 (S.D.N.Y. 2000).

Furthermore, even if plaintiff could establish a *prima facie* case of retaliation with respect to either the bonus/raise or termination issue, defendant has proffered a legitimate, nondiscriminatory reason for its actions. Defendant has pointed to specific, discrete instances which it claims constituted poor work performance and a failure of plaintiff to live up to her responsibilities as an attorney at the firm. Plaintiff disputes this characterization of her work product in an attempt to establish pretext, but she provides no evidence that the partners at the firm did not honestly and reasonably believe that the quality of her performance was poor, nor does she dispute any of the specific instances of poor performance cited by defendant. The correctness of defendant's belief is immaterial in the pretext inquiry, so long as its belief was honest and in good faith. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). Accordingly, the Court

23

should conclude that defendant is entitled to summary judgment on plaintiff's FMLA retaliation claims.

F.     *Plaintiff's ADA Claims*

Plaintiff also brings claims under the Americans with Disabilities Act, alleging discrimination by defendant based on her disability, and retaliation for exercising her rights under the ADA.

1.     *Applicable Law*

Section 107(a) of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117 incorporates by reference § 706 of Title VII of the Civil Rights Act of 1964.  As with the FMLA retaliation claim, a Title VII claim, and hence an ADA claim, is governed by the *McDonnell Douglas* burden shifting framework:

> In Title VII actions, "a plaintiff may establish discrimination either by introducing direct evidence or by proving inferential and circumstantial evidence which would support an inference of discrimination." *Kline v. Tenn. Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). When using circumstantial evidence to create an inference of discrimination, the complainant must carry the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination by his or her employer. In evaluating a claim of employment discrimination, we employ the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 39 L.Ed.2d 668 (1973). *See also Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 525-53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A plaintiff who successfully establishes a prima facie case receives the benefit of a presumption that the employer unlawfully discriminated against him. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. The burden then "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* at 253, 101 S.Ct. 1089 (quoting *McDonnell*, 411 U.S. at 802, 93 S.Ct. 1817). Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant was not its true reasons, but were a pretext for discrimination." *Id.* Throughout this shifting burdens framework applicable when circumstantial evidence is involved, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all

24

times with the plaintiff." *Id.*; *see also Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

*DiCarlo v. Potter*, 358 F.3d 408, 414-415 (6th Cir. 2004).

In order to establish a *prima facie* case of disability discrimination under the ADA, plaintiff must show that "(1) [s]he is a member of a protected class; (2) [s]he suffered an adverse employment action; (3) [s]he was qualified for the position in question; and (4) [s]he was treated differently from similarly situated individuals outside of [her] protected class." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004); *see also*, *DiCarlo*, 358 F.3d at 415. In order to establish a *prima facie* case of ADA retaliation, plaintiff must show that "1) [she] engaged in protected activity; 2) the employer knew of the protected activity; 3) the employer thereafter took an adverse employment action; [and] 4) there is a causal connection between the protected activity and the adverse action." *Equal Employment Opportunity Comm'n v. Sundance Rehabilitation Corp.*, 466 F.3d 490, 501 (6th Cir. 2006); *see also*, *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 814-15 (6th Cir. 1999).

2.      *Discrimination*

a. *Prima Facie Case*

Defendant contends that plaintiff cannot establish a *prima facie* case of discrimination because plaintiff cannot show that she was a member of the protected class, *i.e.*, that she is disabled. Under the ADA, "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12012(2). Plaintiff claims that she was an individual with a disability under all three categories of § 12012(2). *See* Pl.'s Compl. ¶ 38. The Supreme Court has explained that "consideration of subsection (A) of the definition proceeds in three steps. First, we consider whether respondent's [condition is] a physical

25

impairment.  Second, we identify the life activity upon which respondent relies . . . and determine whether it constitutes a major life activity under the ADA.  Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity." *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

"Whether the plaintiff has an impairment within the meaning of the ADA is a question of law for the court to decide."  *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003)); *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 475 (1999) ("the determination of whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment, including, in this instance, eyeglasses and contact lenses."); *Bragdon*, 524 U.S. at 637 (1998) ("HIV infection satisfies the statutory and regulatory definition of a physical impairment during every stage of the disease."); *Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 598 (6th Cir. 2002) ("We must make an individualized inquiry into whether a plaintiff is disabled."). "Whether the conduct affected is a major life activity for purposes of the Act is also a legal question for the court."  *Doebele*, 342 F.3d at 1129; *see also Funk v. Purdue Employees Federal Credit Union*, 334 F. Supp. 2d 1102, 1104 (N. D. Ind. 2004) ("The issue of whether Funk's obesity is or can be regarded as an 'impairment' within the meaning of the ADA, and the issue of whether one or more of the activities identified by Funk as being affected by her obesity are 'major life activities' within the meaning of the ADA are seemingly questions of law to be determined by this Court before the case is submitted to the jury.").

"[A]scertaining whether the impairment substantially limits the major life activity is a factual question for the jury."  *Doebele*, 342 F.3d at 1129 (referencing *Bristol*, 281 F.3d at 1157).  *See also Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (with regard to evidence of disability,

the court stated that "Kiphart presented sufficient evidence showing he is substantially limited in his ability to perform manual tasks[.]"); *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 763 (3d Cir. 2004) ("The question of whether an individual is substantially limited in a major life activity is a question of fact."); *Potts v. Centex Homes*, No. 3:04-1147, 2006 WL 89924, *5 (M. D. Tenn. Jan. 12, 2006) (with regard to "[d]isability under the ADA" the court stated that "Potts' condition is not fleeting and a reasonable jury could conclude, based on this evidence and its own life experience, that Potts' difficulty in performing assorted manual tasks is a substantial limitation compared to the ability of most people to perform the manual tasks essential in their daily lives."). "Determining both how well 'the average person in the general population' performs any given major life activity and whether the plaintiff has proven he is 'unable to perform' or is 'significantly restricted' in performing a major life activity involves weighing evidence and assessing credibility of witnesses, tasks historically given to the jury in our judicial system." *Doebele*, 342 F.3d at 1129 (quoting 29 C.F.R. § 1630.2(j)).

Here, there is no question that plaintiff's Graves' disease constitutes an "impairment" under the ADA. *See Harris v. H & W Contracting Co.*, 102 F.3d 516, 519-20 (11th Cir. 1996); *Bonitch v. Original Honey Baked Ham Co. of the East, Inc.*, 34 F. Supp. 2d 154, 158 (E.D.N.Y. 1999). Likewise, there is no question that the life functions identified by plaintiff as having been impaired by her Graves' disease–caring for oneself, standing, walking, seeking, manual tasks, lifting, and working–constitute "major life activities" under the ADA. *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002); 45 C.F.R. § 84.3(j)(2)(ii). Thus, the only question is whether there is a genuine issue of material fact as to whether plaintiff's impairments substantially limit her ability to perform these major life functions.

27

The Court need not resolve this question, however, because even if plaintiff was "disabled" under the ADA, and thus a member of the protected class, her ADA discrimination claim fails on other elements of the *prima facie* case.  First, with respect to the raise and bonus issues, as explained above the defendant's failure to give plaintiff a raise or bonus to which she had no entitlement does not constitute an adverse employment action, as explained in connection with plaintiff's FMLA retaliation claim.  *See Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996); *Nasis-Parsons v. Wynne*, No. 4:05CV36, 2006 WL 1555913, at \*5 (E.D. Va. June 1, 2006); *Casiano v. Gonzales*, No. 3:04CV67, 2006 WL 229956, at \*12 (N.D. Fla. Jan. 31, 2006).

Second, and more importantly, each of plaintiff's ADA discrimination claims fails because she has not shown that she was treated differently from similarly situated non-disabled employees of the firm.  Plaintiff has not identified, either in her complaint or in her response to defendant's motion for summary judgment, a single non-disabled employee who was similarly situated to her but who was treated differently by defendant.  Plaintiff bears the burden of specifically identifying other employees and explaining how they are similarly situated to her in all relevant respects.  *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002); *Murphy v. M.C. Lint, Inc.*, 440 F. Supp. 2d 990, 1006 (S.D. Iowa 2006); *Edwards v. Niles Sales & Serv., Inc.*, 439 F. Supp. 2d 1202, 1226 (S.D. Fla. 2006).  Plaintiff has presented "no evidence identifying the [non-disabled] employees whose employment situation [she] contends was nearly identical to hers, and therefore, she has made no showing that there were similarly situated [non-disabled employees] who were treated differently than she was."  *Monak v. Ford Motor Co.*, 95 Fed. Appx. 758, 764 (6th Cir. 2004).  Plaintiff therefore cannot establish a *prima facie* case of discrimination.  *See Shah v. General Elec. Co.*, 816 F.2d 264, 270 (6th Cir. 1987) ("Absent proof that other employees were similarly

situated, it is not possible to raise an inference of discrimination.").

### b. Legitimate Reason/Pretext

Further, even if plaintiff could establish a *prima facie* case of discrimination based on her disability, defendant is entitled to summary judgment because it has offered legitimate, non-discriminatory reasons for its denial of a bonus to and termination of plaintiff which plaintiff has not rebutted. As explained in connection with plaintiff's FMLA retaliation claim, defendant has pointed to specific, discrete instances which it claims constituted poor work performance and a failure of plaintiff to live up to her responsibilities as an attorney at the firm. Plaintiff disputes this characterization of her work product in an attempt to establish pretext, but she provides no evidence that the partners at the firm did not honestly and reasonably believe that the quality of her performance was poor, nor does she dispute any of the specific instances of poor performance cited by defendant. The correctness of defendant's belief is immaterial in the pretext inquiry, so long as its belief was honest and in good faith. *See See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). Accordingly, defendant is entitled to summary judgment on plaintiff's ADA discrimination claims.

### 3. Retaliation

It is not clear whether plaintiff also claims that she was retaliated against for exercising her rights under the ADA. To the extent that she is attempting to raise such a claim, the claim fails. As noted above, this claim is subject to the burden-shifting framework and thus fails at the legitimate reason/pretext stage of the inquiry for the same reasons that her ADA discrimination and FMLA retaliation claims fail at this stage of the inquiry. Further, the only ADA-protected activity in which plaintiff engaged was filing her EEOC charge and commencing this lawsuit, both of which occurred

29

after all of the allegedly adverse actions taken against her by defendant.  Because these events preceded this protected activity, there is no causal connection between the protected activity and BSDD's actions.  *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (employment action which was planned by employer prior to the protected conduct was not causally related to protected conduct); *Lentz v. City of Cleveland*, 410 F. Supp. 2d 673, 694 (N.D. Ohio 2006) (no causal relationship between police officer's assignment to gym duty and his protected activity where his assignment to gym duty predated his protected conduct).

G.   *Plaintiff's Direct Evidence of Discrimination and Retaliation*

Notwithstanding plaintiff's inability to satisfy the burden-shifting framework, plaintiff contends that defendant's motion for summary judgment must be denied because she has direct proof of discrimination which takes her ADA and FMLA claims outside the burden-shifting framework applicable to cases involving only circumstantial evidence of discrimination.  To establish a "direct evidence" discrimination case, a plaintiff must present evidence "'which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'"  *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*. 176 F.3d 921, 926 (6th Cir. 1999)).  This in general requires a showing of pertinent comments by company decision makers which evince a discriminatory animus.  *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759-60 (6th Cir. 2000).  Vague, ambiguous, and isolated remarks not related to the decision making process and the adverse action are insufficient direct evidence of animus to create a question of fact for the jury.  *See Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330-31 (6th Cir. 1994).  Unlike with circumstantial evidence under the *McDonnell Douglas* framework, if the plaintiff offers sufficient direct evidence

30

of discrimination, the defendant bears the burden of proving, as an affirmative defense, that its decision was motivated by legitimate nondiscriminatory considerations. *See Weberg*, 229 F.3d at 522-23.

Here, plaintiff principally relies on the statements of Michael Reynolds, a member of the firm, made following her termination. According to her affidavit, Reynolds told plaintiff that the decision to terminate plaintiff was based on her disability and taking of leave. *See* Pl.'s Resp. Br., Ex. A, Aff. of Rebecca Kesler, ¶ 13. While these statements by Reynolds, if true, might constitute direct evidence of discrimination, the Court should conclude that the evidence in the manner submitted by plaintiff does not establish a genuine issue of material fact sufficient to withstand summary judgment.

It is well settled that a party may not create a genuine issue of fact for trial by offering an affidavit of an interested witness that contradicts the witness's prior sworn testimony. *See Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 619 (6th Cir. 2001); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Here, plaintiff gave detailed testimony during the first day of her deposition regarding why she felt she had been discriminated against, pointing to numerous examples of conduct or comments of the firm's partners which she claimed evidenced such discrimination. At no point in this detailed testimony did she mention her conversation with Reynolds. *See* Def.'s Br., Ex. 1, Depo. of Rebecca Anne Kesler, at 69-101. When her deposition was resumed over two months later, defense counsel asked plaintiff: "You've had an opportunity to read what you testified to last time. Have you remembered anything that you forgot to tell me last time about why you think any of these people discriminated against you.?" *Id*. at 256. Although plaintiff provided some clarifications and additions to her previous testimony, she again failed to

31

mention her conversation with Reynolds.  *See id.* at 256-57.  When questioned by her own attorney, plaintiff offered some further corrections to her earlier testimony, but did not mention the conversation with Reynolds.  *See id.* at 316-20.  Following this questioning, defense counsel asked plaintiff: "Either between my questioning or with your attorney's questioning have we now corrected everything that you thought needed correcting?"  *Id.* at 321.  Plaintiff responded by pointing out one clerical correction, but again did not mention the conversation with Reynolds.

It is true that "[a] subsequent affidavit may be used to clarify ambiguous or confusing deposition testimony, or it may be based on newly discovered evidence."  *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1297 (7th Cir. 1993).  Here, plaintiff's affidavit does not clarify any ambiguous or confusing testimony from her deposition: she was asked to provide all her evidence of discrimination and did so in detail.  She was further asked twice by defense counsel if she had any other evidence of discrimination to add, and failed to mention the Reynolds conversation.  Nor is the affidavit based on newly discovered evidence, as she clearly had knowledge of the conversation with Reynolds prior to her deposition.  And although plaintiff's affidavit does not explicitly contradict any statement in her deposition–*i.e.*, she did not explicitly deny any conversation with Reynolds in her deposition–inherently contradictory affidavits are as impermissible as directly contradictory affidavits.  *See Richards v. Farner-Bocken Co.*, 145 F. Supp. 2d 978, 1004 (N.D. Iowa 2001) (emphasis added) ("The general rule . . . is that an affidavit that is in direct contradiction of or *inherently conflicts* with prior deposition testimony by the affiant does not raise an issue of material fact, although an exception to the rule may be shown where the affiant explains apparent inconsistencies or demonstrates a plausible reason for a change.")

Several court of appeals cases are on point.  For example, in *Butler v. Raytel Medical Corp.*,

150 Fed. Appx. 44 (2d Cir. 2005), the court affirmed the district court's striking of the plaintiff's affidavit wherein he claimed that he was fired in retaliation for mentioning racial discrimination in an employment survey. The court explained that the affidavit conflicted with the plaintiff's prior deposition testimony because, in that testimony, he "was asked several questions about the content of his survey response and never mentioned discrimination." *Id*. at 45. So too, here, where plaintiff was asked numerous questions regarding her evidence of discrimination and failed to mention her conversation with Reynolds. In *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621 (7th Cir. 2002), the court found that the plaintiff's affidavit stating that her employer threatened to terminate her if she discussed her allegation of sexual harassment with anyone else contradicted her earlier deposition testimony because, when asked if she remembered "anything else" that had been said to her, she replied "no." *See id*. at 623. This is akin to the situation in the present case, where plaintiff was given several opportunities to correct and supplement her deposition testimony.

Also persuasive are several district court cases. For example, in *Bunting v. Nagy*, 452 F. Supp. 2d 447 (S.D.N.Y. 2006), the plaintiff alleged, among other claims, that a hearing officer for his prison disciplinary hearing was biased against him. To support this claim, the plaintiff presented an affidavit in response to the defendants' summary judgment motion asserting that the hearing officer had admitted to the plaintiff that he had prejudiced the case. The court found that this affidavit was insufficient to create a genuine issue of fact, explaining: "With respect to [the officer's alleged statement], it is notable that plaintiff's complaint and subsequent deposition contain no mention of this purportedly highly material and egregious statement. Indeed the absence of any allegation to this effect prior to plaintiff's opposition to summary judgment makes it difficult to credit." *Id*. at 460, 2006 WL 2766018, at *13. In *Erickson v. Wisconsin Dep't of Corrections*, 358

F. Supp. 2d 709 (W.D. Wis. 2005), the plaintiff prison employee, claiming that the defendants failed to protect her from an inmate assault, submitted an affidavit stating that she had told the defendants that a prisoner was loitering in her work area and that she was afraid the prisoner would sexually assault her.  The court found this affidavit insufficient to defeat summary judgment, explaining: "[P]laintiff did not state that she told defendant that she thought Spicer might be planning to sexually assault her at her deposition.  Given the crucial nature of this fact, it is surprising that plaintiff did not mention it at her deposition." *Id*. at 713.  Finally, in *Woolner v. Flair Communications Agency, Inc.*, No. 01 C 6043, 2004 WL 2032717 (N.D. Ill. Aug. 30, 2004), the plaintiff, like the plaintiff here, testified as to specific incidents of sexual harassment by the defendant's employee.  After describing these specific incidents, she was asked if there were any other incidents she believed constituted sexual harassment, and responded "no."  The court held that her subsequent affidavit, describing other instances of sexual harassment, contradicted her earlier deposition testimony and could not be considered.

Here, as in these other cases, plaintiff never mentioned the Reynolds conversation, which is perhaps her central piece of evidence in response to defendant's motion for summary judgment, in her factually detailed complaint, her EEOC charge, or her deposition.  Indeed, she was repeatedly given the opportunity during her deposition to correct her first day's testimony and add any other instances or evidence of discrimination of which she had knowledge, but failed to once mention her conversation with Reynolds.  In other words, plaintiff's "affidavit supplie[s] information that [was] conspicuously omitted during repeated questioning in [her] deposition."  *Butler*, 150 Fed. Appx. at 45.  It therefore does not supply any direct evidence of discrimination sufficient to withstand summary judgment.

H.    *Conclusion*

In view of the foregoing, the Court should conclude that the mediation award in the state court does not preclude the FMLA and ADA claims brought by plaintiff.  Accordingly, the Court should deny defendant's motion to dismiss on the basis of res judicata.  However, the Court should also conclude that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law on plaintiff's FMLA and ADA claims.  Accordingly, the Court should grant defendant's motion for summary judgment on the merits of plaintiff's claims.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives

PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/19/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 19, 2006.

s/Eddrey Butts
Case Manager