UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


REBECCA ANNE KESLER,

                                Plaintiff,          CIVIL CASE NO. 04-40235

v.

BARRIS, SOTT, DENN & DRIKER, PLLC,          HONORABLE PAUL V. GADOLA
                                                    U.S. DISTRICT JUDGE
                          Defendants.
_____/

## ORDER

### I.  Introduction

This civil action, brought by Plaintiff Rebecca Anne Kesler, seeks relief from her former employer, Defendant Barris, Sott, Denn & Driker, PLLC (BSDD), based on events relating to her previous employment with, and termination by, Defendant.  Defendant filed a motion to dismiss and motion for summary judgment.  Those motions were referred to Magistrate Judge Paul Komives for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Komives filed his report and recommendation on December 19, 2006, recommending that Defendant's motion to dismiss based on res judicata be denied and that Defendant's motion for summary judgment be granted.   The parties subsequently filed cross-objections to the report and recommendation.

### II.  Legal Standard

The Court's standard of review for a magistrate judge's report and recommendation depends upon whether a party files objections. If a party does not object to the report and recommendation, the Court does not need to conduct a review by any standard. *See Lardie v. Birkett,* 221 F. Supp. 2d

806, 807 (E.D. Mich. 2002) (Gadola, J.). If a party does object to portions of the report and recommendation, the Court reviews those portions *de novo. Lardie,* 221 F. Supp. 2d at 807. The Federal Rules of Civil Procedure dictate this standard of review in Rule 72(b), that states, in relevant part:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b).

Here, because each side filed objections, this Court reviews *de novo* those portions to which an objection has been made. *See Lardie,* 221 F. Supp. 2d. at 807. *De novo* review in these circumstances requires at least a review of the evidence before the magistrate judge; the Court may not act solely on the basis of a magistrate judge's report and recommendation. *See* 12 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 3070.2 (1997); *see also Hill v. Duriron Co.,* 656 F.2d 1208, 1215 (6th Cir. 1981). The Court may supplement the record by entertaining additional evidence, but is not required to do so. 12 Wright, Federal Practice § 3070.2. After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the magistrate judge. *See Lardie,* 221 F. Supp. 2d at 807. If the Court accepts a report and recommendation, the Court is not required to state with specificity what it reviewed; it is sufficient for the Court to state that it engaged in a *de novo* review of the record and adopts the report and recommendation. *See id*; 12 Wright, Federal Practice § 3070.2.

2

### III.  Background[1]

#### A. Procedural Background

Plaintiff Rebecca Anne Kesler originally commenced two actions against defendant Barris, Sott, Denn & Driker, PLLC ("BSDD" or "the Firm"), her former employer, based on events arising from her employment with, and eventual termination by, defendant. In Case No. 04-40235, filed on August 17, 2004, plaintiff brings claims of employment discrimination on the basis of disability under § 107(a) of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117, as well as retaliation for taking medical leave under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 et. seq. In Case No. 05-40266, filed on June 27, 2005, plaintiff brings claims under the Employee Retirement Income Security Act (ERISA).

On August 18, 2004, the Court entered an Order of Partial Dismissal in Case No. 04-40235, dismissing the state law claims raised by plaintiff. Plaintiff filed an amended complaint in that case, asserting only her federal claims, on August 26, 2004. On December 6, 2006, the Court entered a Stipulated Order consolidating the cases, and a Stipulated Order dismissing the ERISA claims raised in Case No. 05-40266. Accordingly, only the ADA and FMLA claims raised in plaintiff's amended complaint in Case No. 04-40235 now remain pending.

On October 3, 2005, defendant filed a motion for summary judgment on the merits of plaintiff's ADA and FMLA claims.[2]  Plaintiff filed a response to the motion on October 27, 2005,

---

[1]The Court incorporates, nearly verbatim, the procedural and factual background as set forth by Magistrate Judge Komives.

[2] At defendant's request, this motion was stricken by the Court on November 7, 2005, because it inadvertently included exhibits which were required to be filed under seal. Defendant

and defendant filed a reply on November 9, 2005. Second, defendant filed a motion to dismiss based on res judicata on August 1, 2006, arguing that plaintiff's claims are barred by a mediation award entered in state court. Plaintiff filed a response on August 21, 2006, and defendant filed a reply on September 1, 2006.

### B. Factual Background

Plaintiff attended law school at Wayne State University, graduating in 1999 and passing the July 1999 bar exam. On October 22, 2001, plaintiff was hired by defendant, BSDD, to work as an associate in the litigation group. In May 2002, plaintiff was diagnosed with Graves' Disease, which is a rare autoimmune disease of the thyroid. On May 23, 2002, plaintiff sent a memo to managing partner Sharon Woods (also copied to Eugene Driker, senior partner, and Elizabeth Williams-Winfield, firm administrator), informing them of the diagnosis. This memo was supplemented with a note from her treating physician. In the memo, plaintiff stated that, despite the diagnosis, she wanted to continue working, but that she would need time off for testing and that she may possibly need to reduce her work hours at some point. She also stated that in the event surgery was necessary, she would need time off for the surgery and for recovery. In the memo, plaintiff also stated that she wanted to begin treatment using anti-thyroid medication instead of immediately submitting to a surgical removal of the thyroid. Plaintiff alleges that, as a result of the memo, in May of 2002, Mr. Driker told her that she could take off as much time as she needed. Plaintiff alleges that at the end of May 2002, she reduced her schedule to part-time and began working from home without any negative affect on her compensation. Plaintiff also admits to requesting and being granted

---

re-filed the identical motion on November 9, 2005.

accommodations for time off for doctor's appointments, lifting restrictions, secretarial support for typing and compliance with light restrictions.

Plaintiff further alleges that shortly after the circulation of the memo, around May 28, 2002, Williams-Winfield, the firm administrator, approached her and requested that she complete a form entitled, "Request for Family or Medical Leave" (FMLA form). Plaintiff alleges that even though she questioned her eligibility since she had not been employed by the firm for at least 12 months, Williams-Winfield stated that the members of BSDD decided to treat the leave as a FMLA qualified leave. Plaintiff alleges that the FMLA eligibility leave was confirmed by partners Eugene Driker and Morley Witus.

Plaintiff claimed to be experiencing several medical problems associated with Graves' Disease. These symptoms included: difficulty sleeping from approximately October 2001 through November 2002; substantial muscle wasting and weakness in her arms, resulting in an inability to lift her arms over her head or lift heavy objects, and an inability to cook, clean, dress herself, bathe herself, type, or write from approximately May 2002 through May 2003; substantial weakness in her back, legs and stomach muscles, resulting in an inability to stand for more than a few minutes at a time, climb a flight of stairs, walk short distances without taking a break, and difficulty driving and sitting up in a chair from approximately June of 2002 through May or June of 2003; and substantial difficulty seeing and an aversion to bright light due to swelling of the muscles in her eyes.

Plaintiff alleges that as a result of her notification that she had Graves' Disease, she was subjected to infliction of eye pain through light sensitivity and name calling by a partner, Todd

5

Mendel, on several occasions. This treatment spanned from the time she notified the firm of her disease up through the date of her surgery. Plaintiff also alleges that several partners, both before and after her surgery, made comments about the lights being off in her office and threatened to take her cases away due to her illness, despite knowing about her illness when she joined the firm.

After anti-thyroid treatment proved ineffective, plaintiff elected to have her thyroid removed and notified the firm of the date of her surgery in advance. The surgery was scheduled for September 18, 2002, yet plaintiff decided to take off September 17, 2002, in order to relax and prepare mentally; the extra day was not indicated as medically necessary by her treating physician even though she alleged that he had advised her not to even work in the first place. Plaintiff alleges that a partner, Barnes, insisted that she could not leave for her medical leave on September 17 and that she had to work instead. Plaintiff claims to have worked about 9 billable hours that day and began her leave the day of her surgery.

Plaintiff claims that during her medical leave, BSDD employees constantly contacted her regarding discovery questions and where things were located. An employee of defendant, Michelle R. Loggins, admitted in her deposition that the firm had contacted plaintiff on no more than five occasions and that plaintiff did not seem to mind. Plaintiff also alleges that BSDD tried to make her work on cases from home while she was on medical leave, but admits that the documents on which she was supposed to work were never delivered to her home. Plaintiff further admits that she was paid during her medical leave.

Plaintiff returned from her thyroid-related leave on October 9, 2002. Plaintiff claims to have informed a partner, Witus, that she was still very weak and needed to remain on typing and lifting

restrictions. Defendant asserts that in her email informing the firm that she was back to work, plaintiff did not indicate that she was on any restriction and did not provide further documentation to that effect.

Next, in December 2002, plaintiff had a tonsillectomy. Plaintiff informed defendant of the need for the tonsillectomy during the summer of 2002 (plaintiff first said she informed BSDD in mid-June or July, and later stated it was sometime in August); the tonsillectomy had been previously scheduled but was delayed due to the thyroid surgery. Plaintiff had anticipated taking December 5, 2002 (the day of the surgery), and December 6, 2002, off for her tonsillectomy. Due to complications, plaintiff underwent emergency surgery. Plaintiff's husband informed BSDD of the complications. On December 7, 2002, plaintiff contacted Morley Witus and requested an additional week off. The parties do not dispute that the additional time off was granted; however plaintiff asserts that Witus stated that the additional leave would be added to her FMLA entitlement. Plaintiff returned to work the following Friday.

The parties are in dispute regarding the quality of plaintiff's work product throughout her employment. Plaintiff alleges that as early as January 2002, less than three months after she began working for BSDD, the firm conducted its first review of plaintiff's performance. In this review, plaintiff alleges, she was praised for her work and given a $250 bonus. According to plaintiff, the firm was generally satisfied with her efforts; for example, on May 1, 2002, plaintiff was given a memo composed by Donald Barris—a founding member of BSDD—commending her work on a particular case. Defendant, on the other hand, cites numerous examples provided by various partners in the litigation group regarding consistent problems with the quality of plaintiff's performance prior

to January 2003, including, but not limited to: failure to file a motion to stay with the Michigan Circuit Court when a matter was on appeal, despite being specifically directed to do so; arguing with a partner regarding the need to file a third party complaint when being directed to do so; the need to repeatedly redraft briefs, and failure to include in the redraft specific points that she was instructed to include; missing a case directly on point and failing to include that case in the reply brief; turning in sloppy, poorly written memorandum that was to be submitted to a senior partner; using an outdated version of the Civil Jury Instructions to prepare jury instructions for a case going to trial; and regarding a UCC issue, in which the assigning partner outlined the arguments, preparing a memorandum that cited no legal authority and, upon request to follow up with specific research, stating that she did not have the time to complete the work. Defendant contends that many partners found plaintiff's overall work to be superficial and that plaintiff had a poor work ethic. Prior to plaintiff's 2002 year-end evaluation, conducted in January 2003, the partners of the firm met to discuss the performance of the firm's associates. Plaintiff alleges that the firm decided not to give her a raise or bonus because she had taken so much time off for her medical leave and because of her illness. Defendant claims that the reason to defer a decision on her bonus for three months was due to the fact that there was a consensus that her work product was lacking and that evaluating her on just nine months of work was not fair; the partners were giving her a chance to improve and to provide additional writing samples so that her work could be reevaluated after three months. Plaintiff disputes this claim, alleging that the members of BSDD informed her during her January 2003 review that the members felt she was generally doing a good job, and that they only would like to see her performance rise from 90-95% to the level of exceptional.

8

Defendant contends that after the January 2003 evaluation, partners at BSDD continued to have problems with plaintiff's performance, including: failing, as of April 2, 2003, to complete an assignment that had been given to her on February 4; failing to file a motion to stay a matter in the Michigan Circuit Court pending appeal as she had been directed; and failing, when a default was entered for failure to timely answer a complaint, to inform the partner in charge of the case, and failing to make further progress on the case. At a partner meeting in March 2003, the partners reached a consensus that plaintiff had not made any improvements in the areas in which she was lacking and, as a result, a decision was reached to terminate her employment. On April 16, 2003, plaintiff was informed of her termination. She was to remain employed with the firm until May 31, 2003. Subsequently, plaintiff requested and was granted an extension. Her last day of employment was June 13, 2003.[3] Plaintiff filed a charge with the EEOC on February 5, 2004. In that EEOC charge, plaintiff alleged that she did not receive a raise or bonus in 2003 and was subsequently terminated based on her perceived disability. Plaintiff's EEOC charge was dismissed based on the fact that the evidence failed to meet a "more likely than not" standard. Plaintiff then filed the instant lawsuit on August 17, 2004, alleging violations of the Family Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA).

### III.  Objections

### A.  Motion to Dismiss

### 1.  Plaintiff's Objections as to Res Judicata and the Motion to Dismiss

---

[3]Although Magistrate Judge Komives' Report and Recommendation indicated that Plaintiff's last day was "June 13, 2004," a review of the record indicates that it was June 13, 2003.  *See* Def. Mot. for Summ. Judg., p. 7, ¶ H.

As described above, this Court declined to exercise supplemental jurisdiction with respect to Plaintiff's state law claims. Plaintiff subsequently filed an amended complaint in this case, containing only the federal law claims and filed the state law claims in Wayne County Circuit Court.

On June 12, 2006, Plaintiff's state law claims were evaluated by the Wayne County Mediation Tribunal. Pursuant to Michigan Court Rule 2.403, both Plaintiff and Defendant accepted the panel award. Following the parties' acceptance of the award, and in conformity with Michigan Court Rule 2.403(M)(1), the Wayne County Circuit Court dismissed Plaintiff's cause of action on July 24, 2006. Defendant's motion to dismiss the instant cause of action asserts that Plaintiff's federal law claims should be dismissed because res judicata applies to the state court decision.

Considering Defendant's motion, and after a thoughtful analysis, Magistrate Judge Komives' recommended that the parties' acceptance of the case evaluation should not be given claim preclusive effect with respect to Plaintiff's federal law claims now before this Court. *See* Report and Recommendation, pp. 11-15, 35. Neither party objected to the magistrate's analysis of this issue and therefore the Court need not conduct any review. *See Lardie v. Birkett,* 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002) (Gadola, J.).

Although Defendant does not object to the magistrate's analysis of the claim preclusive effect of the state court proceedings, Defendant objects to the magistrate's explicit limitation of the preclusion analysis to claim preclusion. Defendant argues that res judicata, considered under the requirements of *Sewell v. Clean Cut Managment, Inc*., 463 Mich. 569; 621 N.W.2d 222 (2001), precludes this Court from reconsidering issues that were asserted in the state court, in other words, issue preclusion should apply. Defendant's argument fails.

10

Under *Sewell*, "A second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Sewell v. Clean Cut Managment, Inc*., 463 Mich. 569; 621 N.W.2d 222 (2001) (citing *Eaton Co. Bd. of Co. Rd. Comm'rs v. Schultz*, 205 Mich. App. 371, 375-76, 521 N.W.2d 847 (1994)). In the instant matter, the first factor is not met. Although the Court has failed to find a case directly on point, Michigan case law demonstrates that a judgment or dismissal following the acceptance of case evaluation award is not the equivalent of a decision on the merits. *See Klawiter v. Reurink*, 196 Mich. App. 263, 266, 492 N.W.2d 801 (1992) (equating the acceptance of a mediation[4] award to a consent judgment and finding that consent judgment differs substantially from the usual litigated judgment because it is not the "considered judgment of the court." (citations omitted)); *Vermilya v. Carter Crompton*, 201 Mich. App. 467, 472-72, 506 N.W.2d 580 (1993) ("the acceptance of a mediation award is not analogous to a judgment entered after a trial. . . [T]he process used to arrive at a mediation evaluation differs from the trial process in that under the mediation rule no factfinding is necessary, no formal opinion is issued, and the parties are significantly limited in the presentation of evidence."); Hanley v. Mazda Motor Corp., 239 Mich. App. 596, 609 N.W.2d 203, 208 (1999)(equating the mediation process of Michigan Court Rule 2.403 to a settlement and distinguishing it from an offer of judgment under Michigan Court Rule 2.405, an offer of judgement that does operate as a "full and

_____

[4] In the instant case, the parties participated in "case evaluation." However, "The procedure under MCR 2.403 formerly known as 'mediation' was renamed 'case evaluation' effective August 1, 2000." *Dessart v. Burak*, 470 Mich. 37, 38, n.1, 678 N.W.2d 615 (2004).

11

final adjudication on the merits").  *See also* Wright, Miller & Cooper, Fed. Practice & Proc. § 4412

(text and notes 20 and 21)("If the federal court refuses to accept supplemental jurisdiction . . . .

conclusion of state-court proceedings on the state claim will not preclude pursuit of the federal claim

in federal proceedings that continue after the denial of supplemental jurisdiction.").  Accordingly,

Defendant's objection as to the application of res judicata, more specifically relating to issue

preclusion, is denied.

### B.  Motion for Summary Judgment

### 1.  Defendant's Objections as to Defendant's FMLA Eligibility

Defendant next objects to the magistrate judge's conclusion that a genuine issue of material

fact was raised with respect to Plaintiff's FMLA eligibility.  The magistrate acknowledged that there

is no dispute that Plaintiff failed to meet the statutory 12-month employment requirement for FMLA

eligibility.  *See* 29 U.S.C. § 2611(2)(A).  Furthermore, the magistrate considered the applicability

of  29 C.F.R. § 825.110(d), the regulation that  prevents an employer from challenging an

employee's eligibility once that employer has made a determination that the employee is eligible.

The magistrate recognized that courts have routinely invalidated that regulation.  However, the

magistrate concluded that, notwithstanding the above considerations, Plaintiff had raised an genuine

issue of material fact as to whether or not Plaintiff should be considered an eligible employee under

the doctrine of equitable estoppel.

The Court finds no error in the magistrate's analysis.  Plaintiff did not dispute her

ineligibility under 29 U.S.C. § 2611(2)(A).  And, consistent with the magistrate's report and

recommendation,  there can be little doubt about the invalidity of 29 C.F.R. § 825.110(d).  *See*

*Alexander v. Ford Motor Co.*, 204 F.R.D. 314, 320 (E.D. Mich. 2001); *Woodford v. Comm. Action of Greene Co.*, 268 F.3d 51, 55 (2d Cir. 2001); *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 795-97 (11th Cir. 2000); *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000).  However, Plaintiff did raise a genuine issue of material fact as to whether, after Defendant allegedly indicated to Plaintiff that she was eligible for FMLA leave, Defendant is equitably estopped from challenging Plaintiff's eligibility.  *See Wilkerson v. Autozone, Inc.*, 152 Fed. Appx. 444, 449-50; 2005 U.S. App. LEXIS 22492 (6th Cir. 2005); *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332 (6th Cir. 2005) (citing with approval *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 493-494 (8th Cir. 2002); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 722-27 (2d Cir. 2001); *Dormeyer*, 223 F.3d at 582 (7th Cir. 2000)).  Accordingly, Defendant's objections in this regard are denied.

**2. Plaintiff's Objections as to the Scope of the Report and Recommendation with respect to Plaintiff's FMLA Claims**

In Defendant's motions for summary judgment, Defendant set forth two arguments for the dismissal of Plaintiff's FMLA claims: (1) "Plaintiff Was Not An 'Eligible Employee' As Defined By The FMLA At The Time Of Her Leave For Graves' Disease" and (2) "Plaintiff Did Not Apply For FMLA For Her Tonsillectomy."  Def.'s. Mot. for Summ. Judg., pp. 11-12.  Defendant's arguments on this topic consist, in total, of one page of text and are limited strictly to the aforementioned topic headings.

In the report and recommendation, Magistrate Judge Komives thoroughly addressed Plaintiff's FMLA claim and recommended that the Court conclude that there are no genuine issues

13

of material fact under either the interference theory or the retaliation theory. *See Kilian v. Yorozu Automotive Tenn., Inc.*, 454 F.3d 549, 553-53 (6th Cir. 2006) (citing 29 U.S.C. § 2615(a)(1)-(2)). With respect to the interference claim, the magistrate found that Plaintiff failed to establish a genuine issue of material fact that the employer denied the employee FMLA benefits to which she was entitled. *See id.* at 556. With respect to the retaliation claim, the magistrate found that Plaintiff failed to establish a genuine issue of material fact that Plaintiff suffered an adverse action by Defendant or that Plaintiff's termination by Defendant was causally related to her exercise of FMLA rights.

This Court has no question that the magistrate's analysis carefully set forth the relevant law and was well reasoned. However, Defendant's arguments in support of its motion for summary judgment were limited strictly to Plaintiff's FMLA eligibility and Plaintiff's failure to apply for FMLA leave for her tonsillectomy. *See* Def.'s. Mot. for Summ. Judg., pp. 11-12. As such, Plaintiff was not placed on notice that summary judgment was possible with respect to the denial of benefits to which Plaintiff was entitled or that she suffered an adverse action that was not casually connected to the exercise of her FMLA rights. When considering a sua sponte ruling of summary judgment, the Seventh Circuit stated that "The early resolution of factually unsupported claims is a salutary purpose of summary judgment procedure, but that procedure in no way authorizes disposition by surprise." *Macklin v. Butler*, 553 F.2d 525, 530 (7th Cir. 1977). In the instant case, although Plaintiff was placed on notice that she was facing a motion for summary judgment, the issues considered by the magistrate were not raised by Defendant. Therefore, because Plaintiff did not have notice that she was to defend against claims that were not directly raised by Defendant's

14

motion for summary judgment, it would be unfair to find that Plaintiff was unable to survive a motion for summary judgment on those grounds. Accordingly, this portion of Plaintiff's objections to the Report and Recommendation shall be sustained and the corresponding portions of the Report and Recommendation relating to matters beyond the issues of (1) whether Plaintiff was an eligible employee at the time of her leave for Graves' disease and (2) whether she applied for FMLA for her tonsillectomy, shall be rejected.

As discussed above, Plaintiff has raised a genuine issue of material fact as to her eligibility for FMLA leave under a theory of equitable estoppel. Turning to examine Defendant's claim that there is no genuine issue of material fact that Plaintiff did not apply for FMLA leave for her tonsillectomy, the Court finds summary judgment on this matter is inappropriate. Plaintiff alleges that, after discovering her need for additional time off following the complications of her tonsillectomy, her husband notified her superiors by telephone from the emergency room. Pl. Resp. Br., Exh. C, pp. 178-79. Plaintiff further alleges that Morely Witus, one of her superiors at BSDD told him that "he would just add it to [Plaintiff's] FMLA entitlement." *Id.* at 179.

Under 29 C.F.R. § 825.303, an employee need not give advance notice of FMLA leave when such leave is unforeseeable. 29 C.F.R. § 825.303(a). The employee is only required to provide notice as soon as practicable, possibly through a spouse or other family member, and such notice may be made by phone or other similar method. 29 C.F.R. § 825.303(b). Furthermore, "the employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." *Id.* Accordingly, taking the facts as in the light most favorable to Plaintiff, Defendant's argument that summary judgment on the FMLA claims must be granted

15

because Plaintiff did not apply for FMLA leave for her tonsillectomy must be denied.

### 3.  Plaintiff's Objections Relating to Direct Evidence

Following Defendant's October 3, 2005 motion for summary judgment,[5] Plaintiff created an affidavit on October 27, 2005.  That affidavit alleges that a Michael Reynolds, a fellow attorney and member of BSDD, told Plaintiff that Defendant had developed a plan to "make [her] life a living hell," and ultimately terminate her, because of her illness and illness-related leave.  Pl.'s Resp. Br., Ex. A, pp. 3-4.  Plaintiff argues that this evidence, properly considered, presents direct evidence of discrimination, removing her claim from the *McDonnell Douglas* burden shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

Considering the matter, Magistrate Judge Komives carefully reviewed Plaintiff's prior deposition testimony– testimony that failed to allege any inculpating comments by Reynolds– engaged in a wide-ranging survey of appellate court cases, and concluded that Plaintiff's statement contradicted her earlier testimony that omitted Reynolds' comments. Accordingly, Magistrate Judge Komives recommended that Plaintiff's affidavit not be considered as direct evidence because of the well settled rule that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *See Reid v. Sears, Roebuck & co.*, 790 F.2d 453, 460 (6th Cir. 1986).

Plaintiff objects and points to several recent Sixth Circuit cases.  *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907-09 (6th Cir. 2006); *Briggs v. Potter*, 463 F.3d 507, 512-14 (6th

---

[5]The October 3, 2005 motion was subsequently stricken from the docket for reasons not relevant to this order.  Defendant re-filed its motion for summary judgment, under seal, on November 9, 2005.

Cir. 2006). These cases have considerably narrowed the definition of whether subsequent statements are "contradictory" for the purpose of admissibility at the summary judgment stage. *See Aerel, S.R.L.*, 448 F.3d at 907-09; *Briggs*, 463 F.3d at 512-14. Under *Aerel* and *Briggs*, when a witness produces a subsequent affidavit that sets forth information not previously elicited by direct questioning, the affidavit should be considered.[6] *See Briggs*, 463 F.3d at 513. As a result, considering Plaintiff's affidavit under the recent Sixth Circuit precedent that requires this Court to narrowly construe the term "contradictory," the Court must conclude that the affidavit does not directly contradict her previous deposition testimony. Although Plaintiff was repeatedly asked if she had any other evidence to believe she was discriminated against, and had ample opportunity to volunteer the information that now forms a central portion of her case, she is not required to volunteer any information, *See Aerel, S.R.L.*, 448 F.3d at 913. Moreover, because she was not "directly questioned" at her deposition about her conversation with Reynolds, she is not prevented from "supplementing [the] incomplete deposition testimony with a sworn affidavit." *Id.* at 907. Accordingly, the magistrate's report and recommendation must be rejected in this respect.

An analysis of an ADA claim depends on the type of evidence presented to support the claim. *See Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1184-85 (6th Cir. 1996). When a plaintiff is unable to present direct evidence, the claim is analyzed under the *McDonnell Douglas* burden shifting framework. *Id..* (citing *McDonnell Douglas Corp.*, 411 U.S. at 802-03). Because

---

[6]The Court recognizes that, despite the narrowing of the term 'contradictory,' there is an exception when the witness's affidavit "constitutes and attempt to create a sham fact issue." *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)(cited in *Aerel, S.R.L.*, 448 F.3d at 908). Because neither party addressed this point, the Court will not now consider whether Plaintiff's affidavit should be excluded under *Franks*.

17

the magistrate concluded that Plaintiff's affidavit concerning her conversation with Reynolds could not be considered, the magistrate analyzed Plaintiff's claims under the burden-shifting framework. However, now that this Court has concluded that Plaintiff's affidavit was not contradictory under recent Sixth Circuit precedent, a consideration of whether the affidavit presents direct evidence may be required.[7] If there is direct evidence, a non-*McDonnell Douglas* analysis may be appropriate. Accordingly, the Court declines to adopt the report and recommendation relating to the claims analyzed under the burden shifting analysis.

### C.  Other Matters

#### 1.   Remaining Objections

Claims brought under the ADA and FMLA statutes frequently arise from conduct that occurs over an extended period of time.  Such claims often involve detailed and drawn out allegations of fact, some of which may be supported only through circumstantial evidence.  Furthermore, complex regulations surrounding the statutes create procedural and chronological hurdles that must first be cleared before claimants are entitled to proceed.

The adjudication of such claims requires concise, efficient, and pointed briefing.  In the instant matter, counsel litigating on behalf of their clients have filed numerous briefs.  These briefs have frequently exceeded the standard page limits and, whether intended or not, have frequently obscured the relevant issues.

The current situation as to the motion for summary judgment has become considerably

---

[7]Plaintiff also objects that the magistrate did not consider other alleged direct evidence.  *See* Pl.'s Objs., pp. 2, 7-8.  At this time, the Court need not make any findings as to whether that evidence constitutes direct evidence nor decide how it would affect Plaintiff's claims.

clouded.  The magistrate found summary judgment appropriate for Defendant on several narrow grounds.  Therefore, many other claims were not addressed. Additionally, as described above, some of the grounds set forth in the report and recommendation were issues that were not clearly elaborated by either party.

This Court has now accepted and rejected some portions of the report and recommendation. Because the magistrate's report and recommendation recommended granting the motion for summary judgment on several narrow grounds, some issues were not addressed by the magistrate nor addressed by the parties in their objections.  Accordingly, the status of the remaining claims is unclear.

Therefore, to more efficiently adjudicate the remaining issues surrounding the motion for summary judgment, Defendant will be ordered to submit an amended motion for summary judgment. A response and reply may be made in compliance with all applicable rules. In so filing, the parties shall consider the scope of this order, the portions of the report and recommendation accepted and adopted, and the arguments already raised but not yet considered by the Court.  The parties should not attempt to rehash issues already settled.

When drafting the pleadings, the parties are strongly encouraged to concentrate on efficient and specific briefing.  The briefs should thoroughly, but succinctly, cite relevant statutory and case authority, and provide clear and pointed factual references supporting the position.  Underdeveloped and unclear arguments will not be considered.

## 2.  Nature of the Objections to the Report and Recommendation

Finally, the Court must address the nature of the parties' filings following the report and

recommendation.  The magistrate judge explicitly stated in the report and recommendation that, following service of any objections, an opposing party may file a response, **"not more than five (5) pages** in length unless by motion and order such page limit is extended by the Court."  Report and Recommendation, p. 35 (emphasis added).  Furthermore, "The response shall address **specifically**, and **in the same order raised**, **each issue** contained within the objections."  *Id.* (emphasis added).

The parties failed to follow the magistrate's instructions.  First, neither party filed a response that directly addressed each point raised in the objections.  Second, the parties failed to respond to the objections in the order raised.  Third, despite the magistrate's clear instructions, Plaintiff filed a <u>twenty-two</u> page response to Defendant's nine page objection.  This led to Defendant's four page motion to strike Plaintiff's response, to which Plaintiff promptly responded with an eleven page filing of her own.  Clearly, such activity is not directed at the efficient adjudication of the claims now before the Court; Plaintiff could have easily requested an enlargement for its oversized response.  Instead, Plaintiff filed her response and then chose, in her response to the motion to strike, to argue a strained reading of the Federal Rules of Civil Procedure and the Local Rules.

The magistrate's instructions were clear, the response was limited to five pages *total*.  Any other argument is pure sophistry.  As such, Plaintiff's filings in this regard border on being sanctionable.  Because further consideration of these filings is unwarranted and would only detract from adjudicating the substantive claims, it is sufficient at this time for the Court to hereby warn both parties that failure to follow any instruction by the magistrate or any procedural rules may result in sanctions *without any additional warning*.

### IIII.  Conclusion

Accordingly, after a thorough consideration of all the matters now before the Court, and with a goal of effecting the a fair, efficient, and speedy adjudication of the claims before the Court;

**IT IS HEREBY ORDERED** that the December 19, 2006, Report and Recommendation of Magistrate Judge Komives [docket entry # 63]  is **ACCEPTED IN-PART AND DENIED IN-PART**.

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss based on res judicata [docket entry # 56] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion to strike [docket entry #70] is **DENIED** as moot.

**IT IS FURTHER ORDERED THAT**, to the extent not inconsistent with this order, Defendant's motion for summary judgment is **DENIED WITHOUT PREJUDICE**; Plaintiff shall **FILE** an amended motion for summary judgment within **THIRTY (30) DAYS** of the filing of this order.

**SO ORDERED.**

Dated:   __March 30, 2007__                          s/Paul V. Gadola_____
                                                                        HONORABLE PAUL V. GADOLA
                                                                        UNITED STATES DISTRICT JUDGE

21

Certificate of Service

I hereby certify that on   April 2, 2007  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

_____ Gary T. Miotke; Megan P. Norris; Charles T. Oxender _____, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____.


s/Ruth A. Brissaud_____
Ruth A. Brissaud, Case Manager
(810) 341-7845