UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


REBECCA ANNE KESLER,

       Plaintiff,

                                        CASE NOS. 04-CV-40235-FL
    v.                           JUDGE PAUL V. GADOLA
                                        MAGISTRATE JUDGE PAUL KOMIVES
BARRIS, SOTT, DENN &
DRIKER, PLLC,

       Defendant.

_____/


### REPORT AND RECOMMENDATION ON DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT (docket #74)

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Preliminary Matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
           1.   *Defendant's Challenge to Plaintiff's Affidavit* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
           2.   *Scope of the Issues* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     C.    *Plaintiff's FMLA Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
           1.   *Whether Plaintiff is a Protected Individual* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
           2.   *Denial of FMLA Benefits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
           3.   *Retaliation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
           4.   *Conclusion Regarding Plaintiff's FMLA Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     D.    *Plaintiff's ADA Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
           1.   *Whether Plaintiff is an "Individual with a Disability"* . . . . . . . . . . . . . . . . . . . . . 20
           2.   *Defendant's Other Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
                a.  Evidence of Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
                b.  Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
           3.   *Conclusion Regarding Plaintiff's ADA Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
     E.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

\*      \*      \*      \*      \*

I.      RECOMMENDATION: The Court should grant in part and deny in part defendant's

amended motion for summary judgment (docket #74). Specifically, the Court should grant the

motion with respect to plaintiff's FMLA interference claim based on her being required to work on

the day prior to her surgery and with respect to all of plaintiff's ADA claims, and should deny the

motion with respect to plaintiff's remaining FMLA interference claims and with respect to plaintiff's FMLA retaliation claim. More specifically, the Court should conclude that:

(1) plaintiff's affidavit is not a sham affidavit and provides direct evidence of discrimination;

(2) defendant is entitled to summary judgment on plaintiff's FMLA interference claim based on her being required to work on September 17, 2002, because there is no evidence that she had a serious health condition on that date entitling her to FMLA leave;

(3) defendant is not entitled to summary judgment on plaintiff's remaining FMLA interference claims or on her FMLA retaliation claim because there are genuine issues of material fact, most notably through Reynolds's statements to plaintiff, as to whether she was denied benefits to which she was entitled under FMLA and as to whether defendant discriminated against her for taking FMLA leave;

(4) defendant is entitled to summary judgment on plaintiff's ADA claims because there is no genuine issue of material fact with respect to whether plaintiff is "disabled" and thus protected by the ADA. If the Court disagrees with this conclusion, the Court should alternatively conclude that (a) defendant is entitled to summary judgment on all but plaintiff's wrongful termination claim because plaintiff did not file an EEOC charge within 300 days of the wrongful acts, but (b) defendant is not entitled to summary judgment on plaintiff's ADA wrongful termination claim because genuine issues of material fact, again provided by Reynolds's statements, exist as to whether plaintiff was terminated based on her alleged disability.

II.     REPORT:

A.     *Procedural Background*

Plaintiff Rebecca Anne Kesler commenced these actions against defendant Barris, Sott, Denn

& Driker, PLLC ("BSDD" or "the Firm"), her former employer, based on events arising from her employment with and eventual termination by defendant. In Case No. 04-40235, filed on August 17, 2004, plaintiff brings claims of employment discrimination on the basis of disability under § 107(a) of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117, as well as retaliation for taking medical leave under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et. seq.* In Case No. 05-40266, filed on June 27, 2005, plaintiff brings claims under the Employee Retirement Income Security Act (ERISA). On August 18, 2004, the Court entered an Order of Partial Dismissal in Case No. 04-40235, dismissing the state law claims raised by plaintiff. Plaintiff filed an amended complaint in that case, asserting only her federal claims, on August 26, 2004. On December 6, 2006, the Court entered a Stipulated Order consolidating the cases, and a Stipulated Order dismissing the ERISA claims raised in Case No. 05-40266. Accordingly, only the ADA and FMLA claims raised in plaintiff's amended complaint in Case No. 04-40235 remain pending.

With respect to these claims, defendant filed a motion to dismiss on the basis of *res judicata* and a motion for summary judgment. On December 19, 2006, I filed a Report recommending that the Court deny defendant's motion to dismiss on the basis of *res judicata*, but that the Court grant defendant's motion for summary judgment. Specifically, I recommended that the Court conclude that there were no genuine issues of material fact remaining with respect to whether: (1) plaintiff was denied FMLA benefits; (2) defendant retaliated against plaintiff for exercising her FMLA rights; and (3) whether she was treated differently than similarly situated non-disabled employees under the ADA; and (4) whether defendant retaliated against plaintiff for exercising her rights under the ADA. On March 30, 2007, the Court entered an Order accepting in part and rejecting in part my Report, and denying both of defendant's motions. The Court concluded that summary judgment was

not appropriate to defendant because I had recommended granting summary judgment on bases not raised in defendant's motion. Further, the Court concluded that I was wrong to reject as contradictory to her deposition the direct evidence of discrimination raised by plaintiff, *i.e.*, her affidavit detailing a conversation with Michael Reynolds. Accordingly, the court denied defendant's motion for summary judgment, and ordered defendant to file an amended motion for summary judgment focusing on the issues left unresolved by my Report and the Court's Order.[1]

Pursuant to the Court's Order, defendant filed an amended motion for summary judgment on April 30, 2007. Defendant contends that it is entitled to summary judgment on plaintiff's FMLA claims because plaintiff: (1) is not a protected individual under FMLA; (2) cannot show that she was denied any benefits to which she was entitled under FMLA; and (3) cannot show that she was retaliated against for exercising her rights under FMLA. Defendant contends that it is entitled to summary judgment on plaintiff's ADA claims because plaintiff: (1) is not a protected individual under the ADA; (2) is barred by the statute of limitations from asserting any claim under the ADA other than her wrongful termination claim; (3) cannot show that she was discriminated against on the basis of her disability; and (4) cannot show that she was retaliated against for exercising her rights under the ADA. Notwithstanding the Court's prior Order, defendant also argues that plaintiff's affidavit setting forth direct evidence of discrimination constitutes a "sham affidavit" and thus is not probative evidence which may be considered on summary judgment.

Plaintiff filed a response to the motion on May 24, 2007. As a general matter, plaintiff challenges both defendant's attempt to relitigate the adequacy of her affidavit and defendant's

---

[1]The Court entered an amended order on April 2, 2007. The amended order corrected a typographical error, and did not alter the substance of the Court's analysis.

raising of issues which were not previously raised in its first motion for summary judgment. Plaintiff contends that the Court's prior Order precludes these arguments. Plaintiff also disagrees with defendant on the specifics, arguing that there are genuine issues of material fact with respect to each element of her claims such that defendant is not entitled to summary judgment. Defendant filed a reply brief on June 8, 2007.

The factual background, summary judgment standard, and legal standards governing plaintiff's FMLA and ADA claims are set forth in detail in my prior Report, and need not be set forth again here. For the reasons that follow, the Court should grant defendant's motion with respect to plaintiff's FMLA interference claim relating to her being required to work the day before her surgery and with respect to plaintiff's ADA claims, and should deny defendant's motion with respect to plaintiff's remaining FMLA interference claims and with respect to her FMLA retaliation claim.

B.      *Preliminary Matters*

Before discussing the merits of the parties' arguments, however, I first address whether defendant may again challenge plaintiff's affidavit, and whether defendant may raise new issues not raised in its first motion for summary judgment. As explained below, I conclude that defendant's current challenge to plaintiff's affidavit is without merit, but that the Court's Order does not preclude defendant from raising issues which were not raised in its first motion for summary judgment.

1.      *Defendant's Challenge to Plaintiff's Affidavit*

In response to defendant's first motion for summary judgment, plaintiff submitted her own affidavit in which she details a conversation she had with BSDD member Michael Reynolds. According to plaintiff, Reynolds told her that defendant had devised a plan to "make her life a living

hell" and ultimately to terminate her due to her illness and related leaves. In my prior Report, I concluded that because plaintiff had not testified to this conversation in her deposition, the affidavit was contradictory and thus could not be considered in evaluating defendant's summary judgment motion. *See* Report, at 31-34. However, the Court disagreed with my analysis, explaining that the Sixth Circuit's decisions in *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899 (6th Cir. 2006) and *Briggs v. Potter*, 463 F.3d 507 (6th Cir. 2006)

> have considerably narrowed the definition of whether subsequent statements are "contradictory" for the purposes of admissibility at the summary judgment stage. Under *Aerel* and *Briggs*, when a witness produces a subsequent affidavit that sets forth information not previously elicited by direct questioning, the affidavit should be considered. As a result, considering Plaintiff's affidavit under the recent Sixth Circuit precedent that requires this Court to narrowly construe the term "contradictory," the Court must conclude that the affidavit does not directly contradict her previous deposition testimony. Although Plaintiff was repeatedly asked if she had any other evidence to believe she was discriminated against, and had ample opportunity to volunteer the information that now forms a central portion of her case, she is not required to volunteer any information. Moreover, because she was not "directly questioned" at her deposition about her conversation with Reynolds, she is not prevented from "supplementing the incomplete deposition testimony with a sworn affidavit."

Order, at 17 (citations and footnote omitted). In a footnote, the Court noted that "despite the narrowing of the term 'contradictory,' there is an exception when the witness's affidavit 'constitutes an attempt to create a sham fact issue.'" *Id*. at 17 n.6 (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986), *cited in Aerel*, 448 F.3d at 908). The Court declined, however, to consider this issue because it had not been addressed by the parties.

Contrary to plaintiff's argument, this issue has not already been determined by the Court. The Court's Order makes clear that the "sham affidavit" rule may provide a separate basis for rejecting plaintiff's affidavit apart from the issue of whether it contradicted her deposition testimony, and the Court expressly declined to rule on this issue. Nevertheless, the Court should conclude that

defendant cannot benefit from the "sham affidavit" rule.  In *Aerel*, the court explained that "[a] useful starting point for this inquiry is the nonexhaustive list of factors articulated by the Tenth Circuit in *Franks*, where the court noted that the existence of a sham fact issue turns on 'whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain.'" *Aerel*, 448 F.3d at 908-09 (quoting *Franks*, 796 F.2d at 1237).

At first glance, these factors point to the conclusion that plaintiff's affidavit should be excluded as a sham affidavit.  She was cross-examined during her deposition, the conversation with Reynolds had occurred well before her deposition and thus was not newly discovered, and there is no indication that plaintiff, herself a litigator, was confused by defense counsel's questioning.  Such a conclusion, however, would be directly contrary to the Sixth Circuit's subsequent decision in *Briggs*.  In that discrimination case, the plaintiff submitted an affidavit in which he claimed that his supervisor told him that he was more qualified than the candidate ultimately selected for a promotion, despite having failed to reveal this aspect of his conversation with the supervisor during his deposition.  The trial court struck the affidavit in considering the defendant's motion for summary judgment.  *See Briggs*, 463 F.3d at 512.  Specifically, the trial court "relied upon the principle that Brigg's failure to mention such a material piece of evidence when asked about the . . . conversation during the deposition was akin to admitting at the deposition that such evidence did not exist."  *Id*. at 513.  The Sixth Circuit concluded that the striking of this portion of the plaintiff's affidavit was an abuse of discretion.  The court reasoned that the trial court's decision ultimately rested on a belief that the supervisor had not actually made the comments averred to by the plaintiff.

Resting on this disbelief, however, was "inconsistent with the district court's obligation to view the evidence in the light most favorable to Briggs." *Id.* Further, because the plaintiff was not required to volunteer any information and nothing in his affidavit directly contradicted his deposition testimony, he was permitted to fill the gaps in his deposition testimony, regardless of how material was the evidence set forth in the affidavit. *See id.* at 513-14.

So too, here. While the circumstances of plaintiff's affidavit raise a question as to whether it is a sham, in large part such a conclusion would be nothing more than a conclusion that the late disclosure of the evidence render's plaintiff unworthy of belief. As *Briggs* makes clear, however, this would be inconsistent with the Court's role on summary judgment, which requires the Court to view the evidence in the light most favorable to plaintiff without resolving credibility questions. *See id.* at 513. Further, the fact that the evidence is highly material to plaintiff's claim does not alter the conclusion that the affidavit is not contradictory to plaintiff's deposition testimony, as *Briggs* also makes clear. "While [plaintiff's] failure to address [Reynolds's statements] in [her] . . . deposition may call into question [her] credibility, this is ultimately a question for the jury, and . . . it would be inappropriate at this time to strike [plaintiff's] . . . affidavit statements about [Reyolds's statements to her]." *Phillips v. Tradesmen Int'l, Inc.*, No. 1:05CV485, 2006 WL 2849779, at *8 (S.D. Ohio Sept. 29, 2006) (citing *Briggs*). Accordingly, the Court should consider plaintiff's affidavit in ruling on defendant's amended motion for summary judgment.

2.      *Scope of the Issues*

As a second preliminary matter, plaintiff challenges defendant's reliance on arguments not raised in its first motion for summary judgment. Plaintiff argues that the Court's Order directed defendant to address the issues raised in its original motion, and thus any new arguments should be

stricken. While the Court is ultimately in the best position to consider the scope and meaning of its own Order, for purposes of this Report I do not read the Court's order as precluding defendant from raising new issues here, and thus I consider all of the issues raised by defendant in this Report.

In its Order, the Court did not, as plaintiff contends, explicitly instruct defendant to file an amended motion addressing only those issues that had been previously raised but not resolved by me in my prior Report. Rather, the Court explained that I had recommended summary judgment on several narrow grounds, and therefore had not addressed other claims. The Court also explained that I had considered issues not clearly elaborated by the parties. For this reason, the Court concluded that the status of plaintiff's claims was unclear. *See* Order, at 19. The Court therefore ordered defendant to submit an amended motion for summary judgment and plaintiff to file a response. In so ordering, the Court did not preclude the parties from raising any issues. The Court merely directed the parties, in making their arguments, to "consider the scope of this order, the portions of the report and recommendation accepted and adopted, and the arguments already raised but not yet considered by the Court." *Id*. This language does not, by its terms, preclude the raising of new issues. The only limitation on the parties' arguments was the Court's direction that "[t]he parties should not attempt to rehash issues already settled." *Id*.

Unlike some other courts, this Court does not by its local rules prohibit parties from filing multiple summary judgment motions. *See, e.g.*, *Jeffrey O. v. City of Boca Raton*, 511 F. Supp. 2d 1328, 1338 (S.D. Fla. 2007) (discussing S.D. FLA. LR 7.1(C)(2)). Nor has the Court in this case previously entered an order limiting the parties to only one summary judgment motion. *See, e.g.*, *Valdez v. JDR LLC*, No. CV 04-1620, 2006 WL 2038456, at *1 (D. Ariz. July 20, 2006). While the Court of course has the inherent power to prevent gamesmanship and control its docket by

precluding the filing of serial summary judgment motions, the Court has not, at this point, exercised this power in this case. Thus, I find nothing in the court rules or the Court's prior Order which prevents defendant from raising issues which were not raised in its first motion for summary judgment, and I accordingly consider those issues in this Report.

C.      *Plaintiff's FMLA Claims*

Defendant raises three specific arguments as to why it is entitled to summary judgment on plaintiff's FMLA claims. First, defendant argues that plaintiff is not a protected individual under the FMLA, and more specifically she cannot show she is a protected individual under the estoppel doctrine because she did not rely on defendant's representations. Second, defendant argues that plaintiff cannot show that she was denied any benefits granted by the FMLA to support her entitlement (or interference) claim. Third, defendant argues that plaintiff cannot establish a retaliation claim because (a) she cannot establish a *prima facie* case of discrimination or that the reasons offered by defendant for her termination were pretextual, or (b) if this is properly viewed as a direct evidence case, she cannot establish that defendant's actions were taken solely for retaliatory purposes.

1.      *Whether Plaintiff is a Protected Individual*

Defendant first argues that plaintiff is not a protected individual under the FMLA. In my prior Report, I concluded that although this argument was correct as a matter of statutory construction, plaintiff had raised genuine issues of material fact with respect to whether defendant should be equitably estopped from challenging her eligibility. Specifically, I explained:

> To qualify as an "eligible employee" under the FMLA, plaintiff must show that she (1) worked for the employer for at least twelve months; and (2) worked at least 1,250 hours during the twelve month period before the start of the leave. *See* 29 U.S.C. § 2611(2)(A). Plaintiff also must show that her employer employed at

least 50 employees within a seventy-five mile radius of her worksite. *See* 29 U.S.C. § 2611(2)(B)(ii). Plaintiff began working for defendant in October of 2001 and began her medical leave on September 18, 2002. Plaintiff does not dispute that she was not employed for the requisite twelve month period. *See* Pl.'s Br., Ex. C, Pl.'s Depo. 164. However, plaintiff claims that in May of 2002, Elizabeth Williams-Winfield stated that the firm had determined to classify her leave as FMLA-qualifying. *Id.* at 280. As a result, plaintiff asserts that she detrimentally relied on the firm's representation that she was eligible for FMLA leave and therefore defendant is estopped from denying the eligibility. *See* Pl.'s Br. 23.[2] The equitable estoppel doctrine is evoked when a person "makes a definite misrepresentation of fact to another person having reason to believe the other will rely upon it and the other does" so to his or her detriment. *Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223 (1984) (citing RESTATEMENT (SECOND) OF TORTS § 894(1) (1979)). Applying this doctrine to the instant case, plaintiff's assertion that the firm requested that she fill out FMLA paperwork and that she took the leave in reliance on that approval creates a genuine issue of material fact regarding whether or not plaintiff satisfied the initial requirement of being considered an "eligible employee" with regards to her September 2002 leave.[3] *See* Pl.'s Br., Ex. C., Pl.'s Depo. 164, 280. For purposes of analyzing the remaining elements, the Court should therefore proceed on the assumption that plaintiff has satisfied her burden of proving she was an eligible employee.

Report, at 17-18.[4] The Court adopted this portion of my Report. *See* Order, at 12-13.

The Court has therefore already resolved this issue. The Court's resolution necessarily included a finding that plaintiff had established a genuine issue of material fact with respect to whether she relied on defendant's representation that she was eligible for leave under the FMLA.

---

[2] Plaintiff also relies on 29 C.F.R. § 825.110(d) to assert that once an employer determines that an employee is an eligible employee and notifies the employee of that decision, the employer may not subsequently challenge the employee's eligibility. However, several circuits have expressly invalidated the regulation because it impermissibly expands the scope of employee eligibility. *See e.g., Woodford v. Community Action of Greene County*, 268 F.3d 51, 55 (2d Cir. 2001); *Brungart v. BellSouth Telecomms., Inc.* 231 F.3d 791, 795-97 (11th Cir. 2000); *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582-82 (7th Cir. 2000). Defendant also correctly points to a case originating from this Court, *Alexander v. Ford Motor Company*, 204 F.R.D. 315, 319-20 (E.D. Mich. 2001), which agrees with the majority of courts and invalidates the regulation.

[3] Defendant does not dispute that plaintiff was deemed an eligible employee at the time of her tonsillectomy leave.

[4] Citations in this passage are to the briefs filed in connection with defendant's first motion for summary judgment.

Because the Court's Order specifically directed the parties not to rehash issues which had already been determined, defendant is not entitled to summary judgment on this basis.

2.      *Denial of FMLA Benefits*

Defendant next argues that it is entitled to summary judgment on plaintiff's FMLA interference claim because it did not deny her any benefits to which she was entitled under the FMLA. In my initial Report, I recommended that the Court grant summary judgment to defendant on plaintiff's FMLA interference claim on this basis. I reasoned:

> [I]n her complaint plaintiff cites three specific instances to support allegations that defendant denied her the FMLA benefits she was entitled to. These actions include:
>
> (1)   "On or about September 16, 2002, BSDD informed Plaintiff that she could not begin her medical leave as scheduled because BSDD needed her to work of September 17, 2002;"
> (2)   "BSDD repeatedly contacted Plaintiff with work-related questions while plaintiff was on medical leave;" and
> (3)   "BSDD also requested that Plaintiff perform work while she was on medical leave."
>
> Pl.'s Compl. ¶¶ 19, 22, 23.[5] The Court should conclude that none of these instances amounts to a denial of FMLA benefits, and thus that plaintiff has failed to raise a genuine issue of material fact with respect to the fifth element of her FMLA interference claim.
>
> Plaintiff does not satisfy her prima facie case of FMLA interference. Plaintiff's surgery was scheduled on September 18, 2002. Plaintiff stated that she decided to take off September 17th, "[j]ust so [she] would have a day to relax and prepare mentally." *See* Pl.'s Br., Ex. C., Pl.'s Dep. at 164. When pressed further with the question, "Had your doctor indicated that you needed the day, or is that just something you thought would be helpful[,]" plaintiff replied that she thought it would be helpful. *See id.* at 165. Because the FMLA leave is designated for serious health conditions and not simply for relaxation, delaying her leave date by one day is not FMLA interference. *See* Pl.'s Br., Ex. C, Pl.'s Dep. at 164-165.
>
> Next, plaintiff asserts that contacting her at home with work-related questions during her leave interfered with her FMLA benefits. Although plaintiff stated that

---

[5] Plaintiff's complaint does not allege an interference claim with respect to the leave relating to her tonsillectomy.

she would have preferred to have been able to rehabilitate and rest without being disturbed, *see id.* at 90, she also admitted that she did not think it was totally inappropriate for anyone at BSDD to call her while on her medical leave. *See id.* at 89. Furthermore, the facts on record show that most of the instances in which defendant contacted plaintiff had to do with asking details regarding documents the plaintiff had worked on as well as where those documents were located. *See e.g.* Pl.'s Br., Ex. C, Pl.'s Dep. at 88, 89; Pl.'s Br., Ex. F, Dep. of Michelle R. Loggins, at 58-60 (stating that plaintiff never mentioned that she had problem answering the questions posed by BSDD employees); Def.'s Br. Ex. 4, Dep. of Dennis Barnes, at 53 (wanting an employee to "call and find out where the originals of the trust committee minutes" were). Also, plaintiff acknowledged being paid during her FMLA leave. *See* Pl.'s Br., Ex. C, Pl.'s Dep., at 90. Thus, plaintiff's argument that contacting her at home was a violation of her FMLA rights does not succeed.

Finally, plaintiff's assertion that BSDD requested that she work from home must also fail. Plaintiff alleges that on several occasions Dennis Barnes, a partner of BSDD contacted her during her recovery from the thyroid surgery to request that plaintiff review documents at home, or that she return to the office and do so. *See* Pl.'s Br., Ex. C, Pl.'s Depo. 90-1. Plaintiff then stated that she would not come into the office, and that she was on medical leave, but if Barnes wanted to send the discovery material to her home, he could do so. *See Id.* However, plaintiff's deposition also reveals that no documents were ever sent to the plaintiff's home, and therefore she did not conduct any work for the defendant while on FMLA leave for her thyroid surgery. *See* Pl.'s Br., Ex. C, Pl.'s Depo. 91. Accordingly, the Court should grant defendant's motion for summary judgment with respect to plaintiff's FMLA entitlement claims.

Report, at 18-21. The Court did not reject this conclusion on the substance, but rather concluded that the issue was not raised by defendant and therefore should not have been reached by me. In its amended motion, defendant seeks summary judgment on the bases set forth in my Report.

Plaintiff's response to defendant's amended motion provides nothing to alter the conclusion reached in my initial Report with respect to plaintiff's first interference claim based on defendant requiring her to work the day before her surgery. With respect to this claim, plaintiff does not argue that she had a serious health condition which required leave on the day before her surgery. Rather, she contends only that she had been approved for leave starting on that date, and that defendant is estopped from asserting that the start date of her leave should have been something other than the

approved date.  However, plaintiff cannot make out an estoppel claim here because she can show no detrimental reliance.  Had defendant approved her leave to begin on September 17, 2002, and she taken leave on that date, and then defendant disciplined her for doing so, detrimental reliance would be shown.  Here, however, plaintiff was informed prior to taking leave that she needed to work on September 17.  Thus, there was no detrimental reliance.  Nor was there any interference with her FMLA leave, because there was no entitlement to leave on September 17.  By plaintiff's own admission, it was not medically necessary for her to be off work on the day prior to her surgery.  Regardless of what she was originally told by defendant, a FMLA interference claim requires a showing of interference with actual FMLA rights.  Thus, the "central question" in such a case is "simply whether the employee was entitled to the FMLA benefits at issue." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 511 (6th Cir. 2006).  Because plaintiff has made no showing that she was entitled under FMLA to leave on September 17, 2002, she cannot establish a FMLA interference claim based on defendant requiring her to work on that date.

However, with respect to plaintiff's claim that defendant interfered with her FMLA leave by contacting her during work and requesting that she perform work related tasks, upon further consideration of the matter I conclude that plaintiff has raised a genuine issue of material fact with respect to whether defendant interfered with plaintiff's exercise of her rights under FMLA.  While plaintiff was granted leave to have and recover from her surgery, she has presented evidence to show that while on this leave she was repeatedly contacted regarding work related matters, was requested to come in to perform work related tasks, and was asked to perform work related tasks at home.  While she ultimately did not perform any of these tasks, the FMLA prohibits more than simply the denial of leave; it prohibits any interference with the employee's right to take leave.  *See Howard*

*v. Millard Refrigeration Servs., Inc.*, 505 F. Supp. 2d 867, 881 (D. Kan. 2007); 29 C.F.R. § 825.220(b). For this reason the courts, including the Sixth Circuit, have concluded that employer questions to an employee or requests that the employee perform work during the leave period may constitute an interference with the exercise of FMLA rights. *See Arban v. West Pub. Corp.*, 345 F.3d 390, 402-03 (6th Cir. 2003); *McConnell v. Swifty Transp., Inc.*, No. 2:04-CV-0153, 2005 WL 1865386, at *8 (S.D. Ohio July 29, 2005); *Sherman v. AI/FOCS, Inc.*, 113 F. Supp. 2d 65, 70-71 (D. Mass. 2000). Because plaintiff has presented evidence showing that her leave was interfered with in this manner, defendant is not entitled to summary judgment.[6]

3.      *Retaliation*

Defendant also argues that it is entitled to summary judgment on plaintiff's FMLA retaliation claim. In my original Report, I recommended that the Court conclude that plaintiff had failed to demonstrate a genuine issue of material fact with respect to the elements of her *prima facie* case, and that she had failed to establish any genuine issue of material fact to show that defendant's proffered legitimate, nondiscriminatory reason for her termination was a pretext for discrimination. *See* Report, at 21-24. Defendant seeks summary judgment on these bases.

My determination, however, was based on the *McDonnell Douglas* burden shifting paradigm due to my conclusion that plaintiff's direct evidence of discrimination–her affidavit detailing Reynolds's comments to her–was not properly before the Court. The Court disagreed with that

---

[6]There does remain a question as to whether, and if so to what extent, plaintiff may recover damages for this interference. The FMLA damages provision generally limits damages to actual economic losses sustained as a result of the violation. *See Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 455 (6th Cir. 2005); 29 U.S.C. § 2617. Thus, for example, emotional distress damages are not available. *See Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1007-08 (6th Cir. 2005). The parties have not addressed this issue and I do not consider it here.

determination, and as explained above plaintiff's affidavit is not inadmissible either as contradictory to her prior deposition testimony or as a sham affidavit. Thus, the *McDonnell Douglas* framework is inapplicable here.

To establish a "direct evidence" discrimination case, a plaintiff must present evidence "'which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*. 176 F.3d 921, 926 (6th Cir. 1999)). This in general requires a showing of pertinent comments by company decision makers which evince a discriminatory animus. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 759-60 (6th Cir. 2000). Vague, ambiguous, and isolated remarks not related to the decision making process and the adverse action are insufficient direct evidence of animus to create a question of fact for the jury. *See Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330-31 (6th Cir. 1994). Unlike with circumstantial evidence under the *McDonnell Douglas* framework, if the plaintiff offers sufficient direct evidence of discrimination, the defendant bears the burden of proving, as an affirmative defense, that its decision was motivated by legitimate nondiscriminatory considerations. *See Weberg*, 229 F.3d at 522-23.

Here, plaintiff's affidavit presents sufficient direct evidence that she was retaliated against for exercising her FMLA rights to withstand summary judgment. Reynolds was a member of defendant and one of the decisionmakers present when the members of defendant terminated plaintiff's employment. Reynolds's comments include his own beliefs regarding the reasons for plaintiff's termination and reflected the comments of other decisionmakers. They were not stray or ambiguous comments, but went to the heart of the reasons for plaintiff's termination, one of which

was plaintiff's taking of FMLA guaranteed medical leave. Reynolds comments are thus sufficient to show a retaliatory animus on the part of defendant's decisionmakers. As the Sixth Circuit has explained, direct evidence of discrimination is evidence which, if believed, requires a finding of discriminatory animus without the need for the jury to draw any inferences. *See Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005); *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). Here, were the jury to believe plaintiff's evidence regarding Reynolds's comments, it would not have to draw any inferences to conclude that plaintiff's taking of leave was a motivating factor in her termination; that fact is plain from the face of Reynolds's comments. Thus, plaintiff's affidavit constitutes direct evidence of FMLA retaliation.

Defendant does not contest that, if plaintiff's affidavit is considered, it constitutes direct evidence of discrimination. Rather, defendant argues that plaintiff's direct evidence is insufficient to withstand summary judgment because she cannot show that her termination was based solely on her exercise of FMLA rights, and that it had legitimate reasons for terminating plaintiff which would have resulted in her termination regardless of her use of FMLA leave. The Court should reject defendant's arguments.

First, plaintiff's direct evidence need not show that the termination was based *solely* on her exercise of FMLA rights. It is true that the Sixth Circuit, in a discrimination case under the ADA, stated that "[t]he only question left for resolution, in most disability discrimination cases in which the employer admits reliance on the disability (or other direct evidence of discrimination exists), is whether the adverse employment decision was based *solely* on the employee's disability." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1180 (6th Cir. 1996) (emphasis in original). The Court has subsequently explained, however, that *Monette* does not stand for the proposition that a plaintiff

with direct evidence must establish that discrimination was the sole reason for the discharge, but rather that an employer can avoid liability "if, besides discrimination, there were other good and sufficient reasons established to discharge the plaintiff." *Todd v. City of Cincinnati*, 436 F.3d 635, 637 (6th Cir. 2006). And in decisions subsequent to *Monette*, the Sixth Circuit has repeatedly stated the direct evidence test as requiring a plaintiff to proffer evidence which, if believed, shows that discrimination or retaliation "'was at least *a motivating factor* in the employer's actions.'" *Weberg*, 229 F.3d at 522 (6th Cir. 2000) (quoting *Jacklyn*, 176 F.3d at 926) (emphasis added); *see also*, *Tepper v. Potter*, 505 F.3d 508, 516 (6th Cir. 2007); *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 800 (6th Cir. 2007); *In re Rodriguez*, 487 F.3d 1001, 1007 (6th Cir. 2007); *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006); *Johnson*, 319 F.3d at 865; *Wexler v. White's Fine Furniture*, 317 F.3d 564, 570 (6th Cir. 2003).

Thus, *Monette* stands only for the unexceptional point that a plaintiff's presentation of direct evidence does not end the matter, because an employer may still establish that it would have taken the same actions regardless of its discriminatory or retaliatory animus. However it is the defendant-employer, and not the plaintiff-employee, who bears the burden of proof on this issue. As the Sixth Circuit has explained: "In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *see also*, *Minadeo*, 398 F.3d at 763. Defendant contends that it has provided unrebutted evidence that it would have terminated plaintiff based on her poor performance, and thus that it is entitled to summary judgment on this basis. The Court should disagree.

To be sure, defendant has presented significant evidence that it had problems with plaintiff's performance as an attorney in the firm, and that these performance problems underlay its decision to terminate plaintiff. However, plaintiff has presented some evidence which, if believed, refutes defendant's evidence. For example, plaintiff testified in her deposition that Dennis Barnes, the member with whom she most closely worked, told her that he was not displeased with her work but was angry with her for taking leave. *See* Pl.'s Br., Ex. C, at 92-93. Further, Reynolds's alleged comments to plaintiff themselves provide evidence that her termination was not the result of performance-related issues, because Reynolds stated that the decision was based on plaintiff's disability and related leaves and that there was nothing plaintiff could have done to improve her situation. Importantly, because defendant bears the burden of proof on this issue it is not entitled to summary judgment merely by "pointing out" a lack of evidence on the matter in support of plaintiff. Rather, where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense." *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997); *see also*, *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992). Because the evidence, viewed in the light most favorable to plaintiff, does not compel the conclusion that plaintiff would have been terminated even in the absence of defendant's allegedly retaliatory animus, defendant is not entitled to summary judgment on this claim.

4.      *Conclusion Regarding Plaintiff's FMLA Claims*

For the reasons discussed above, the Court should conclude that defendant is entitled to summary judgment on plaintiff's FMLA interference claim arising from defendant requiring her to

work on the day before her surgery because there is no evidence that she was entitled to leave under the FMLA for that day. The Court should also conclude that plaintiff has raised a genuine issue of material fact with respect to whether defendant interfered with her leave by calling her and requesting that she perform work related tasks during her leave, and that defendant is therefore not entitled to summary judgment on this claim. Finally, the Court should conclude that plaintiff's affidavit recounting Reynolds's comments to her constitutes direct evidence of FMLA retaliation and that there remain genuine issues of material fact with respect to whether defendant would have terminated her for performance-related reasons regardless of its allegedly retaliatory animus, and thus that defendant is not entitled to summary judgment on plaintiff's FMLA retaliation claim.

D.    *Plaintiff's ADA Claims*

Defendant also seeks summary judgment on plaintiff's discrimination and retaliation claims brought under the ADA. Specifically, defendant contends that it is entitled to summary judgment on these claims because: (1) plaintiff is not an "individual with a disability" protected by the ADA; (2) plaintiff's claims (other than her termination) are time-barred; and (3) plaintiff cannot establish discrimination under the ADA.

1.    *Whether Plaintiff is an "Individual with a Disability"*

Defendant first argues that plaintiff's ADA claims fail because she is not an "individual with a disability" who is protected by the Act. In my initial Report, I touched on this question, but did not ultimately resolve it based on my determination that plaintiff had failed to establish the other elements of her *prima facie* case. My analysis began:

> Under the ADA, "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12012(2). Plaintiff claims that she was an individual with

a disability under all three categories of § 12012(2). *See* Pl.'s Compl. ¶ 38. The Supreme Court has explained that "consideration of subsection (A) of the definition proceeds in three steps. First, we consider whether respondent's [condition is] a physical impairment. Second, we identify the life activity upon which respondent relies . . . and determine whether it constitutes a major life activity under the ADA. Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity." *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

"Whether the plaintiff has an impairment within the meaning of the ADA is a question of law for the court to decide." *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003)); *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 475 (1999) ("the determination of whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment, including, in this instance, eyeglasses and contact lenses."); *Bragdon*, 524 U.S. at 637 (1998) ("HIV infection satisfies the statutory and regulatory definition of a physical impairment during every stage of the disease."); *Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 598 (6th Cir. 2002) ("We must make an individualized inquiry into whether a plaintiff is disabled."). "Whether the conduct affected is a major life activity for purposes of the Act is also a legal question for the court." *Doebele*, 342 F.3d at 1129; *see also Funk v. Purdue Employees Federal Credit Union*, 334 F. Supp. 2d 1102, 1104 (N. D. Ind. 2004) ("The issue of whether Funk's obesity is or can be regarded as an 'impairment' within the meaning of the ADA, and the issue of whether one or more of the activities identified by Funk as being affected by her obesity are 'major life activities' within the meaning of the ADA are seemingly questions of law to be determined by this Court before the case is submitted to the jury.").

"[A]scertaining whether the impairment substantially limits the major life activity is a factual question for the jury." *Doebele*, 342 F.3d at 1129 (referencing *Bristol*, 281 F.3d at 1157). *See also Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (with regard to evidence of disability, the court stated that "Kiphart presented sufficient evidence showing he is substantially limited in his ability to perform manual tasks[.]"); *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 763 (3d Cir. 2004) ("The question of whether an individual is substantially limited in a major life activity is a question of fact."); *Potts v. Centex Homes*, No. 3:04-1147, 2006 WL 89924, *5 (M. D. Tenn. Jan. 12, 2006) (with regard to "[d]isability under the ADA" the court stated that "Potts' condition is not fleeting and a reasonable jury could conclude, based on this evidence and its own life experience, that Potts' difficulty in performing assorted manual tasks is a substantial limitation compared to the ability of most people to perform the manual tasks essential in their daily lives."). "Determining both how well 'the average person in the general population' performs any given major life activity and whether the plaintiff has proven he is 'unable to perform' or is 'significantly restricted' in performing a major life activity involves weighing evidence and assessing credibility of witnesses, tasks historically given to the jury in our judicial system." *Doebele*,

342 F.3d at 1129 (quoting 29 C.F.R. § 1630.2(j)).

Here, there is no question that plaintiff's Graves' disease constitutes an "impairment" under the ADA. *See Harris v. H & W Contracting Co.*, 102 F.3d 516, 519-20 (11th Cir. 1996); *Bonitch v. Original Honey Baked Ham Co. of the East, Inc.*, 34 F. Supp. 2d 154, 158 (E.D.N.Y. 1999). Likewise, there is no question that the life functions identified by plaintiff as having been impaired by her Graves' disease–caring for oneself, standing, walking, seeking, manual tasks, lifting, and working–constitute "major life activities" under the ADA. *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002); 45 C.F.R. § 84.3(j)(2)(ii). Thus, the only question is whether there is a genuine issue of material fact as to whether plaintiff's impairments substantially limit her ability to perform these major life functions.

Report, at 25-27.

Turning to this remaining question, the Court should conclude that plaintiff has presented insufficient evidence to show that her impairment substantially limited her ability perform the identified major life functions to withstand summary judgment. To be sure, plaintiff testified at length regarding the limitations she had in caring for herself, standing, walking, seeing, performing manual tasks, lifting, and working. *See* Pl.'s Br., Ex. C, at 74-76, 82-83, 128-30, 246. In each case, however, plaintiff testified that the limitations lasted for about a year, from May or June of 2002 until May or June of 2003. Because the purpose of the ADA is to protect the truly disabled, it is not enough for a plaintiff to show that she had an impairment which substantially limited her ability to perform major life functions for some period of time; "[t]he impairment's impact must also be permanent or long term." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) (citing 29 C.F.R. § 1630.2(j)(2)(ii)-(iii)). The courts that have considered the matter have uniformly held that impairments with impacts lasting around a year, and even up to two years, are not sufficiently permanent or long-term to come within the ambit of the ADA's definition of disability. *See Rinkenberger v. City of Clearwater*, 44 Fed. Appx. 23, 24 (8th Cir. 2002) (11 months); *Durham v. City of Portland*, No. 99-35236, 2000 WL 328122, at *2 (9th Cir. Mar. 24, 2000) (10 months);

*Lamboy-La Salle v. Puerto Rico Tel. Co.*, 8 F. Supp. 2d 122, 125 (D.P.R. 1998) (16 months);

*Wilmerth v. City of Santa Rosa*, 945 F. Supp. 1271, 1276 (N.D. Cal. 1996) (2 years); *Rakestraw v.*

*Carpenter Co.*, 898 F. Supp. 386, 390-91 (N.D. Miss. 1995) (22 months); *cf. Roush v. Weastec, Inc.*,

96 F.3d 840, 843 (6th Cir. 1996) (plaintiff did not show impacts of kidney impairment, which caused

him multiple absences and surgeries and prevented him from working for more than ten weeks in

each of the two years he was suffering from them, was permanent or long term where kidney

transplant ultimately resolved his impairments).

Here, plaintiff's own testimony establishes that the substantial limitations caused by her

impairment each lasted for about one year. There is no other evidence in the record suggesting that

the impact of plaintiff's impairment is permanent or long-term.[7] Thus, plaintiff has failed to raise

a genuine issue of material fact with respect to whether she is "disabled" under the ADA, and

defendant is accordingly entitled to summary judgment on her ADA claim.

2.      *Defendant's Other Arguments*

If the Court accepts the foregoing recommendation, there is no need to consider defendant's

remaining arguments in support of its motion for summary judgment on plaintiff's ADA claims. For

the sake of judicial economy, however, I address those arguments here in the event that the Court

rejects my recommendation.

a.  *Evidence of Discrimination*

---

[7]It is irrelevant whether plaintiff was still suffering limitations caused by her impairment at the time of her termination. Whether an employee is "disabled" is an objective inquiry dependent, in part, on the temporal scope of her impairment. Thus, in *Roush* the Sixth Circuit "considered the fact that plaintiff's kidney condition had been corrected by treatment and no longer affected her ability to work, a result occurring after the time of the discriminatory acts, in determining that this condition was temporary and not substantially limiting." *Swanson v. University of Cincinnati*, 268 F.3d 307, 316 (6th Cir. 2001) (discussing *Roush*, 96 F.3d at 844).

Defendant argues that plaintiff cannot establish a *prima facie* case of disability discrimination, or that its proffered reasons for her termination are pretextual. Defendant's argument on this claim mirrors its argument with respect to plaintiff's FMLA retaliation claim, and fails for the reasons discussed above with respect to that claim. As explained above, plaintiff's affidavit describing Reynolds's comments to her provides direct evidence that defendant discriminated against her on the basis of her disability. Although defendant may be able to show that it was not motivated by a discriminatory animus or that it would have taken the actions it did even in the absence of such an animus, these are matters of credibility reserved to the jury. Thus, for the reasons explained above in connection with plaintiff's FMLA retaliation claim, the Court should conclude that defendant is not entitled to summary judgment on plaintiff's ADA discrimination claim on the basis that she has failed to establish her *prima facie* case.

### b. Statute of Limitations

Defendant also contends that it is entitled to summary judgment on any ADA claim asserted by plaintiff, except for her wrongful termination claim, on the basis of the statute of limitations. The ADA incorporates the administrative filing requirements of Title VII of the Civil Rights Act. *See* 42 U.S.C. § 12117(a). As the Supreme Court has recently explained,

> An individual wishing to challenge an employment practice under this provision must first file a charge with the EEOC. [42 U.S.C.] § 2000e-5(e)(1). Such a charge must be filed within a specified period (either 180 or 300 days, depending on the State) "after the alleged unlawful employment practice occurred," *ibid.*, and if the employee does not submit a timely EEOC charge, the employee may not challenge that practice in court, § 2000e-5(f)(1).

*Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S. Ct. 2162, 2166-67 (2007). Because Michigan is a "deferral state," plaintiff had to file a charge with the EEOC within 300 days of the alleged unlawful employment practice. This period begins to run on the date the discriminatory act

occurs, and the 300-day limitation period separately applies to each discrete act of discrimination. *See id*. at 2165, 2169. Further, a discrete act of discrimination is not actionable if there is no timely EEOC charge, even if it is related to timely filed acts of discrimination. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002). Although this time limit is not jurisdictional in that it is subject to the typical limitations principles of waiver, estoppel, and equitable tolling, *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), it is nonetheless a mandatory prerequisite to suit that may not be set aside or waived in the absence of one of these recognized bases for doing so. *See Jones v. Truck Driver Local Union No. 299*, 748 F.2d 1083, 1086 (6th Cir. 1984); *cf. Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 n.6 (1984) (per curiam).

The parties do not dispute that plaintiff's EEOC charge was filed on February 5, 2004, and that the 300-day period prior to that date runs back to April 11, 2003. Plaintiff's allegedly wrongful termination was on April 16, 2003, and thus her EEOC charge was timely with respect to this claim. However, defendant contends that any claims by plaintiff relating to the denial of her raise or bonus or defendant's failure to grant her requests for accommodation are time barred. The Court should agree.

With respect to the raise and bonus issue, plaintiff contends that these decisions were not made until she was terminated in April. However, this contention belies her argument that the failure to grant her a raise and bonus in January 2003 was itself an adverse action which violated her rights under both the FMLA and the ADA. Indeed, in her EEOC charge plaintiff listed the deferral of the bonus/raise decision in January as the allegedly discriminatory action. *See* Def.'s Br., Ex. 19. While defendant indicated in January 2003 that it was delaying its decision on the raise/bonus issue,

plaintiff has always characterized this decision itself as the prohibited adverse action, and any further decision on the raise/bonus issue was rendered moot by defendant's termination of her employment before a further review of the raise/bonus issue was made. Thus, any claim that plaintiff was denied a raise or bonus in violation of the FMLA must depend on the defendant's failure to provide her a raise and bonus in January 2003. And because this discrete act was outside the 300-day period predating the filing of her EEOC charge, the claim is untimely. And, contrary to plaintiff's argument, each paycheck that she received which did not include the raise does not constitute a discrete act of discrimination which is actionable and timely. *See Ledbetter*, 127 S. Ct. at 2167-76.

Likewise, plaintiff's claims relating to defendant's failure to grant her requests for accommodation are untimely. There is no evidence that plaintiff made any request for accommodation within the 300-day period predating the filing of her EEOC charge. And each request for accommodation constitutes a discrete act of discrimination for limitations purposes. *See Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368-69 (D.C. Cir. 2007); *Long v. Howard Univ.*, 512 F. Supp. 2d 1, 16-17 (D.D.C. 2007); *Butler v. Potter*, 345 F. Supp. 2d 844, 851 (E.D. Tenn. 2004). Accordingly, these claims are barred.

Plaintiff offers two arguments to counter this conclusion. First, she argues that she is alleging a hostile environment claim, and thus all of defendant's allegedly discriminatory acts are actionable so long as one of the acts occurred within the limitation period. In *Morgan*, the Supreme Court recognized that a hostile environment claim by its nature depends on a serious of acts, and thus such a claim is timely so long as one of the acts complained of occurred in the filing period. *See Morgan*, 536 U.S. at 115. However, as defendant rightly notes the problem with this argument

is that plaintiff did not exhaust her hostile environment claim with the EEOC. Plaintiff's EEOC charge relates two discrete acts of discrimination: the delay in the determination of her raise and bonus, and her termination. It does not allege a hostile environment, nor does it provide any facts would lead the EEOC to investigate a hostile environment claim. It alleges only "specific acts at specific times," *Chacko v. Patuxent Inst.*, 429 F.3d 505, 511 (4th Cir. 2005), and is limited to the facts involving these discrete acts of discrimination, *see Green v. Elixir Indus., Inc.*, 152 Fed. Appx. 838, 840-41 (11th Cir. 2005); *O'Brien v. Lucas Assocs. Personnel, Inc.*, 127 Fed. Appx. 702, 708 (5th Cir. 2005). Because the EEOC charge did not properly assert a hostile environment claim, that claim is not properly before this Court. *See Rodriguez Velazquez v. Autoridad Metropolitoma de Autobuses*, 502 F. Supp. 2d 200, 209-10 (D.P.R. 2007); *Wells v. BAE Sys. Norfolk Ship Repair*, 483 F. Supp. 2d 497, 511 (E.D. Va. 2007); *Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 464 (S.D.N.Y. 2005). Thus, plaintiff cannot use her hostile environment claim to render timely her claims other than her termination claim.[8]

Plaintiff also argues that she could not have known of the allegedly discriminatory basis of the defendant's actions before her conversation with Reynolds in April 2003, and thus she is entitled to tolling of the limitation period. The seminal case on this issue is *Reeb v. Economic Opportunity*

---

[8]The Supreme Court's recent decision in *Federal Express Corp. v. Holowecki*, No. 06-1322 (U.S. Feb. 27, 2008), does not alter this conclusion. In that case, the Court considered whether an Intake Questionnaire was sufficient to constitute a "charge" of discrimination with the EEOC as required by the Age Discrimination in Employment Act. The Court held that it was, because it contained all of the information required to be included in a charge by the applicable regulations. *See Holowecki*, slip op. at 13-16. Nothing in the Court's decision suggests that a charge, whether formal or informal, need not provide the bases of the plaintiff's discrimination claims to constitute an EEOC "charge." *Cf. id.* at 3 (noting that the plaintiff had attached to the charging document an affidavit "describing the alleged discriminatory employment practices in greater detail."); *id.* at 4 (noting that the regulations governing a charge require, *inter alia*, "a statement of facts describing the alleged discriminatory act.").

*Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975), in which the Fifth Circuit held that the time for filing begins to run when "the facts that would support a charge of discrimination . . . were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff." *Id.* at 931. A number of courts have adopted this standard, including the Sixth Circuit. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1389 (3d Cir. 1994) (citing cases); *Allen v. Diebold, Inc.*, 33 F.3d 674, 676 (6th Cir. 1994). Even assuming that this rule survived the Supreme Court's decision in *Morgan*,[9] plaintiff cannot benefit from it here. Here, according to plaintiff's own complaint and testimony, she knew that she was being harassed because of her medical condition, and knew that the decision on her raise and bonus was delayed precisely because she had been out on leave. Further, plaintiff testified that Dennis Barnes told her explicitly that he was mad at her for taking leave, and that other members of defendant had made comments to her based on her medical condition. If her own allegations are true then plaintiff, herself an attorney, should have known that defendant's actions were the result of discrimination on the basis of her impairment at the time those actions were taken. *Cf. Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178-79 (9th Cir. 2000); *Pokuta v. International Ass'n of Machinists & Aerospace Workers, Dist. Lodge 142*, 158 F. Supp. 2d 853-54 (N.D. Ill. 2001). Accordingly, plaintiff is not entitled to equitable tolling, and all of her ADA claims, with the exception of her wrongful termination claim, are time barred.

### 3.    *Conclusion Regarding Plaintiff's ADA Claims*

In view of the foregoing, the Court should conclude that there is no genuine issue of material

---

[9]In *Morgan*, the Court explained that the EEOC charge must be filed within 180 or 300 days of the discriminatory act, without mentioning any accrual or tolling rule based on the plaintiff's knowledge of the employer's discriminatory animus. *See Morgan*, 532 U.S. at 110.

fact with respect to whether plaintiff was "disabled" under the ADA and therefore should grant defendant's motion for summary judgment with respect to plaintiff's ADA claim. If the Court disagrees with this conclusion, the Court should conclude that (1) defendant is entitled to summary judgment on all of plaintiff's ADA claims except for her wrongful termination claim because the claims are time-barred, and (2) defendant is not entitled to summary judgment on plaintiff's ADA wrongful termination claim because genuine issues of material fact remain with respect to whether defendant terminated her employment based on her alleged disability.

E. *Conclusion*

In view of the foregoing, the Court should grant in part and deny in part defendant's motion for summary judgment. More specifically, the Court should conclude that:

(1) plaintiff's affidavit is not a sham affidavit and provides direct evidence of discrimination;

(2) defendant is entitled to summary judgment on plaintiff's FMLA interference claim based on her being required to work on September 17, 2002, because there is no evidence that she had a serious health condition on that date entitling her to FMLA leave;

(3) defendant is not entitled to summary judgment on plaintiff's remaining FMLA interference claims or on her FMLA retaliation claim because there are genuine issues of material fact, most notably through Reynolds's statements to plaintiff, as to whether she was denied benefits to which she was entitled under FMLA and as to whether defendant discriminated against her for taking FMLA leave;

(4) defendant is entitled to summary judgment on plaintiff's ADA claims because there is no genuine issue of material fact with respect to whether plaintiff is "disabled" and thus protected by the ADA. If the Court disagrees with this conclusion, the Court should alternatively conclude

that (a) defendant is entitled to summary judgment on all but plaintiff's wrongful termination claim because plaintiff did not file an EEOC charge within 300 days of the wrongful acts, but (b) defendant is not entitled to summary judgment on plaintiff's ADA wrongful termination claim because genuine issues of material fact, again provided by Reynolds's statements, exist as to whether plaintiff was terminated based on her alleged disability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES

UNITED STATES MAGISTRATE JUDGE

Dated: 2/28/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 28, 2008.

s/Eddrey Butts
Case Manager